UNITED STATES DISTRICT COURT
District of Massachusetts

Civil Action No.: 18-10426-ADB

* * * * * * * * * * * * * * * * * * * * *
Kevin S. Clapp,                          *
      Plaintiff                        *
v.                                       *
                                        *
Governor Charles Baker, et al.,          *
      Defendants                       *
* * * * * * * * * * * * * * * * * * * * *

## AMENDED COMPLAINT

1. Governor Charles Baker, Governor of Massachusetts
2. Michael W. Morrissey, Norfolk County District Attorney
3. Colonel Richard McKeon, Massachusetts State Police (Retired)
4. Daniel Bennett, Secretary of Public Safety
5. Colonel Kerry Gilpin, Massachusetts State Police
6. Sheriff Joseph D. McDonald, Jr., Plymouth County House of Correction and Jail
7. Judge Paul Dawley, Chief Justice of the District Courts
8. Judge Michael Vitali, Massachusetts District Court Judge
9. Judge Julie Bernard, Massachusetts District Court Judge
10. Judge Steven Thomas, Massachusetts District Court Judge
11. Judge Paula Clifford, Massachusetts District Court Judge
12. Judge Antoinette Leoney, Massachusetts District Court Judge
13. Judge Robert Ziemian, Retired Judge but active as per diem Judge
14. Daryl Manchester, Clerk of Courts, Wareham District Court
15. Arthur Tobin, Clerk of Courts, Quincy District Court
16. Sergeant Cruz, Middleboro Massachusetts State Police Barracks
17. Dennis A. Maietta, Chief Probation Officer, Stoughton District Court
18. Robin E. Vaughn, Clerk of Stoughton District Court
19. James Flanagan, First Assistant Clerk Magistrate, Stoughton District Court
20. Edward Dolan, Massachusetts Commissioner of Probation
21. Diane Fasano, Massachusetts Deputy Commissioner of Probation Department (ELMO) Training Academy
22. Mr. George Brewster, Brewster Ambulance owner
23. Stephen Nickerson, Paramedic, Brewster Ambulance Co.
24. Attorney Terrance McCarthy
25. Trooper John McCarthy, Brighton Massachusetts Barracks
26. Lt. Mark Cohen, Mass. State Police, Middleboro Barracks – was a Sgt. At time of incident
27. Lt. Gerard R. Mattaliano, Mass. State Police Headquarters, Framingham
28. Lt. Michael Richards, Mass. State Police Headquarters, Framingham

29. Mr. Leo J. Murray
30. Trooper John M. Fanning, Homicide Detective, Norfolk County District Attorney's office
31. Trooper Vincent Noe, Detective, Middlesex County District Attorney's office
32. Trooper Ronald Solimini, Jr., (CAT) Team assigned to Community Action Team
33. Trooper Bruce J. Tobin, Norfolk County District Attorney's office
34. Trooper Andrew Da Silva, (CAT) Team Community Action Team
35. Trooper Andrew Mason, (CAT) Team Community Action Team
36. Trooper Brian P. Tully, Norfolk County District Attorney's office
37. Trooper Scott Kearns, Norfolk County District Attorney's office
38. Sgt. Brian Brooks, Norfolk County District Attorney's office
39. Police Chief Silva, Westwood Massachusetts Police
40. Officer Kathryn McCarron, Westwood Police
41. Attorney Kevin Mullen, Special Assistant Prosecutor for Norfolk County District Attorney's office

## COMPLAINT AND CLAIM FOR JURY TRIAL

### JURISDICTION

1. Jurisdiction of this action arises under the Americans with Disabilities Act (ADA) 42 U.S.C. §12111, et seq. and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. ("Title VII"). Further, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

2. Venus is proper in this Court in that this is the judicial district in which Plaintiff and Defendants reside and in which the relevant events occurred.

3. Plaintiff, Kevin S. Clapp ("Plaintiff") is an individual residing in Brockton, Plymouth County, Massachusetts and a citizen of the United States.

4. The Defendants all reside in Massachusetts and are citizens of the United States.

5. There is a two-year statute of limitations for a claim for the tort of negligence and a three-year statute of limitations for civil rights violation claims under 42 U.S.C. §1983. The incident happened to the Plaintiff on March 8, 2016. A large part of this action lies on negligence and the special damages are well over $12 million and continuing, resisting arrest, charged with stalking, charged with 2 counts of threats to commit a crime to kill Trooper John Fanning and his wife, also charged with criminal harassment.

6. Each one of the Defendants have violated the Plaintiff's constitutional rights, his civil rights and his human rights, and they have done so in a "reckless and careless disregard" for the Plaintiff's wellbeing and still continues to this day. Their acts are malicious and intentional. Prior to this incident, I was a disabled man under the Americans with Disabilities Act ("ADA") 42 U.S.C. §12111, et seq.

2

On Section 1983 of Title 42 of the U.S. Code, I can prove to this Court that the Judges I listed to sue did in fact violate my constitutional rights.

## PLEADINGS

1.      Governor Charles Baker violated the Plaintiff's constitutional rights and his human rights by engaging from "2013" to date in such a reckless manner to use his job position as Governor of Massachusetts to engage in a conspiracy himself by his influence to other state agencies.  Governor Charles Baker has met me three times and told me on my last visit to the State House in 2017 that he has chosen not to help me, as I did remind him that his wife told him when I was in his kitchen after my mother at age 98 was brutally beaten at the Clarke House Re-Hab Center in Westwood, Mass. on August 23, 2013.  She quoted, "Charlie, if you help Kevin, you will never be Governor."  My mother subsequently died from her injuries of a lower gastro bleed and other complications on November 21, 2013.  Since that time, I have kept in contact with the Governor thinking that he was going to help me "get justice."  Rather, he engaged in a vindictive reckless manner and he has and continues to use a campaign at retaliation through numerous state agencies in which I was even told by several upper level individuals that Governor Charles Baker is out to get you.  Further, Governor Baker knew of my pending criminal case and the outcome of all not guilty's on March 9, 2018 by a Dedham District Court jury.  The Governor was aware that the following state troopers assigned to Norfolk County District Attorney's Office, Michael W. Morrissey's office, Trooper John M. Fanning, Trooper Bruce J. Tobin, Trooper Brian P. Tully, Trooper Scott Kerans did willfully and maliciously submit false police reports, committed perjury while testifying in court, engaged in violations of the Plaintiff, Kevin Clapp's civil rights, human rights, and his constitutional rights.  They have engaged in outrageous conduct and are still employed after the overwhelming evidence of police misconduct and false arrest.  Trooper Bruce Tobin committed perjury with other troopers to falsely accuse and falsely charge the Plaintiff to be charged with an arrestable felony by lying under oath to obtain such arrest warrant.  Trooper Bruce Tobin being the ringleader who submitted a fraudulent police report under the pains and penalties of perjury as to arrest.  The Plaintiff who in fact never committed any crime.  The troopers also used excessive force, violated their own use of force policy, never showed any arrest warrant to the Plaintiff, never identified themselves as state police officers, showed no badges, guns, flashlights or anything to show their authority of a badge, failure to intervene.  Also, Trooper Vincent Noe, Middlesex District Attorney's Office.  It is undisputable and with overwhelming evidence that I can prove to this Court that Governor Charles Baker has taken part in such a vindictive way as to cause the Plaintiff further harm and it continues.

2.      Michael W. Morrissey, Norfolk County District Attorney, has engaged in a reckless and careless disregard for the Plaintiff's safety and wellbeing and has personally engaged in a conspiracy of his own and did in fact influence others to violate the Plaintiff's constitutional rights, civil rights, human rights – on or around January, 2014.  While outside a church, Mr. Morrissey came up to me and stated to me, "Your days are numbered" and "If I you were smart, you would drop your mother's murder case."  He also stated he will go to the very end to protect his elected job position and his department against anything I make public.  The following state troopers assigned to Norfolk County District Attorney's Office, Michael W. Morrissey's office, Trooper John M. Fanning, Trooper Bruce J. Tobin, Trooper Brian P. Tully,

Trooper Scott Kerans did willfully and maliciously submit false police reports, committed perjury while testifying in court, engaged in violations of the Plaintiff, Kevin Clapp's civil rights, human rights, and his constitutional rights.  They have engaged in outrageous conduct and are still employed after the overwhelming evidence of police misconduct and false arrest.  Trooper Bruce Tobin committed perjury with other troopers to falsely accuse and falsely charge the Plaintiff to be charged with an arrestable felony by lying under oath to obtain such arrest warrant.  Trooper Bruce Tobin being the ringleader who submitted a fraudulent police report under the pains and penalties of perjury as to arrest.  The Plaintiff who in fact never committed any crime.  The troopers also used excessive force, violated their own use of force policy, never showed any arrest warrant to the Plaintiff, never identified themselves as state police officers, showed no badges, guns, flashlights or anything to show their authority of a badge, failure to intervene.  Also, Trooper Vincent Noe, Middlesex District Attorney's Office.

      3.      Colonel Richard McKeon, Retired Massachusetts State Police, has engaged in retaining the employment of Mass. State Trooper John M. Fanning since he knew though me and others that Trooper Fanning was not qualified for the job, that he had been involved in a rape of a transvestite in Key West, Florida at the Guest Quarters Suite Hotel in the hotel room of such victim who is willing to come forward and testify against the Defendant in the rape and sodomizing that took place in January or February 2005 while the Defendant was still employed as a police officer with the Stoughton, Mass. Police Department.  Further Colonel McKeon knew of the mental health issues of the Defendant and also knew that the Defendant was a member of the South Boston gang involved in drug distribution with his parents and other individuals.  The Defendant also while on probation as a Massachusetts State Trooper or during his State Police Academy training did engage in a serious knife fight and continued to make sure that the State Police Internal Affairs Unit never exposed this.  Further, the Colonel had direct knowledge that Trooper John Fanning was a male prostitute and was a hire for sex police officer engaging in foreseeable sex acts with men or women for hire.  Trooper Fanning was a danger to himself and the general public.  The State Police were negligent in not doing a well-documented and honest background check.  Had this been done, he never would have been hired.  Trooper Fanning also had and still has a violent outburst towards dogs and this Plaintiff has witnessed the inhumane abuse towards his own dog.  The following state troopers assigned to Norfolk County District Attorney's Office, Michael W. Morrissey's office, Trooper John M. Fanning, Trooper Bruce J. Tobin, Trooper Brian P. Tully, Trooper Scott Kerans did willfully and maliciously submit false police reports, committed perjury while testifying in court, engaged in violations of the Plaintiff, Kevin Clapp's civil rights, human rights, and his constitutional rights.  They have engaged in outrageous conduct and are still employed after the overwhelming evidence of police misconduct and false arrest.  Trooper Bruce Tobin committed perjury with other troopers to falsely accuse and falsely charge the Plaintiff to be charged with an arrestable felony by lying under oath to obtain such arrest warrant.  Trooper Bruce Tobin being the ringleader who submitted a fraudulent police report under the pains and penalties of perjury as to arrest.  The Plaintiff who in fact never committed any crime.  The troopers also used excessive force, violated their own use of force policy, never showed any arrest warrant to the Plaintiff, never identified themselves as state police officers, showed no badges, guns, flashlights or anything to show their authority of a badge, failure to intervene.  Also, Trooper Vincent Noe, Middlesex District Attorney's Office.

4.     Daniel Bennett, Secretary of Public Safety, has engaged in a reckless and careless disregard and had known through me and others of the reckless and careless disregard of keeping Trooper John M. Fanning employed in such capacity as to harm himself and others. Plaintiff realleges and incorporates herein the allegations contained in Pleading Number 3. Further, Daniel Bennett was well aware as the Secretary of Public Safety of the issues brought to his attention and that the criminal case of Commonwealth v. Clapp, Docket #1655CR00281, was a case of perjury, fraud, police misconduct and civil rights violations, abuse of authority, excessive force, false arrest, failure to intervene, false imprisonment, submitting and lying on police reports, on taped interviews, while under oath in Court to testify. As a result, the Plaintiff, Kevin Clapp, after a four-day jury trial in the Dedham District Court did receive all not guilty's. The following state troopers assigned to Norfolk County District Attorney's Office, Michael W. Morrissey's office, Trooper John M. Fanning, Trooper Bruce J. Tobin, Trooper Brian P. Tully, Trooper Scott Kearns did willfully and maliciously submit false police reports, committed perjury while testifying in court, engaged in violations of the Plaintiff, Kevin Clapp's civil rights, human rights, and his constitutional rights. They have engaged in outrageous conduct and are still employed after the overwhelming evidence of police misconduct and false arrest. Trooper Bruce Tobin committed perjury with other troopers to falsely accuse and falsely charge the Plaintiff to be charged with an arrestable felony by lying under oath to obtain such arrest warrant. Trooper Bruce Tobin being the ringleader who submitted a fraudulent police report under the pains and penalties of perjury as to arrest. The Plaintiff who in fact never committed any crime. The troopers also used excessive force, violated their own use of force policy, never showed any arrest warrant to the Plaintiff, never identified themselves as state police officers, showed no badges, guns, flashlights or anything to show their authority of a badge, failure to intervene. Also, Trooper Vincent Noe, Middlesex District Attorney's Office.

5.     Colonel Kerry Gilpin, Massachusetts State Police, has engaged in a reckless and careless disregard for the Plaintiff's civil, human and constitutional rights by keeping employed and not having any suspensions or investigations into the outrageous conduct of Trooper John M. Fanning, Trooper Vincent Noe, Trooper Bruce J. Tobin, Trooper Brian P. Tully, Trooper Scott Kearns, Sgt. Brian Brooks. Plaintiff realleges and incorporates herein the allegations contained in Pleading Nos. 3 and 4.

6.     Sheriff Joseph D. McDonald, Jr., Plymouth County House of Correction and Jail. This Defendant was negligent in not properly supervising his jail personnel where I was brought to the Plymouth House of Correction and Jail for one night. This was the wrong venue since the alleged warrant was out of Norfolk County Stoughton Court. The proper venue would have been the Norfolk Jail. Because of this, the Plaintiff was taken to Brockton District Court where there was no pending matter before that Court. The Judge even said, "Why is he here?" As a result, a default was issued and so was an arrest warrant out of the Stoughton Court. Further, after being booked at the Plymouth Jail, I was stripped of my clothes and three correction officers laughed at me and gave me some type of green plastic to put around me and told me that was my cell. Having worked in corrections, it is referred to as "the boat." The bench (white, metal) to sleep on is only 12" wide, no pillow or blanket. These conditions were deplorable and a violation of my civil, human and constitutional rights.

7.    Judge Paul Dawley, Chief Justice of the District Courts.  After making several phone calls to Judge Dawley's office to inform him of every Judge that had violated my constitutional Amendment VIII – "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted" and Amendment VI – "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously  ascertained by law, and to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."  I tried to explain that a Judge is not immune from a lawsuit if the Judge had violated your constitutional rights, if they are not acting in his or her judicial capacity due to their oath to uphold the Constitution and the Supreme Court cases that dictate every court must follow the law of the land.  I pleaded with Judge Dawley's office to enforce my rights and gave every Judge's name and the constitutional violation.  I told his office that Attorney Terrance McCarthy was using the official Quincy District Court parking lot for non-court purposes and Attorney McCarthy was using it to walk to his office and paying Quincy District Court Clerk Arthur Tobin $300 cash a month for such use, having New Hampshire dealer plates and his son's Mass. State Police decals on his car and a Mass. driver's license.  Judge Dawley's office told me they have no control over the court parking.  Call the City of Quincy Parking Clerk.  The City of Quincy Parking Dept. told me it is the court's parking lot and Arthur Tobin reports to Judge Paul Dawley.

8.    Judge Michael Vitali – Violated my Constitutional Right Amendment VIII – "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  On or about June 7, 2017, Judge Vitali denied to remove all charges to Plymouth County thus all cases to be heard by one jury at Brockton District Court. He also denied my ankle bracelet to be removed even though I had three orthopedic surgeons' letters urging a Judge to remove bracelet for MRI diagnosis to treat left foot fracture and broken tendons made worse by State Police kicking me.  He also violated Amendment VI – "By an impartial jury of the state and district wherein the crime shall have been committed."  Judge Vitali denied my constitutional right to proper venue, which the truth prevailed at the jury trial. The alleged victim, Trooper John M. Fanning, admitted under oath that he was not in his office in Canton, Norfolk County.  He was at home in Hanover, Plymouth County.  Judge Vitali said, find out the venue.  At trial, I am not interested.  Had Judge Vitali not denied the venue, the Defendant would not be suffering, going through two trials and two juries when venue was improper.

9.    Judge Julie Bernard – On July 17, 2018, my case of Resist Arrest, Docket No. 1615CR001347, Brockton District Court, denied to dismiss with prejudice the case of Resist Arrest on January 11, 2018. Judge Neil Hourihan made it clear and put it also on the docket for no more continuances. Judge Bernard violated my constitutional rights, civil and human rights by not dismissing this case.

10.    Judge Steven Thomas on December 21, 2016 in Stoughton Court, Docket No. 1655CR281, violated my Constitutional Rights Amendment VIII.  Denies ankle bracelet removal for MRI, violated Amendment VI by denying to dismiss or change to proper venue.  Also denied to expunge warrant for my arrest which was Stoughton Court's fault.  I should have never been

taken to Brockton Court. Moreover, the State Police waited two weeks to charge me with Resist Arrest. Judge Thomas should have clearly seen that the warrant was done by the Stoughton District Court so how could I be there to answer a warrant if I was taken to the wrong court? It was also put on my driving record. The Registry needed a letter to remove it from my driving record saying it was a mistake but Judge Thomas denied my constitutional right. Further, Judge Thomas on February 21, 2017 denied my right to counsel which was a constitutional violation of Amendment VI. He would not let me speak under my First Amendment Rights. He prohibited me the freedom of speech when I tried to explain to him that my first attorney, Benjamin M. Lupatkin, a CPCS lawyer, violated my rights by telling me, "I will not try this case. You will not win. You will go to jail." I terminated him and was assigned Attorney Brenda Klein, who was intoxicated and smelled of alcohol. She would call me on her cell phone to tell me to tell the Judge she would be at the second call. When an attorney withdraws, they put "irretrievable breakdown in communications" but the client can never explain why or what the attorney did wrong. Judge Thomas told me I will not get any more lawyers. This is your last or do it yourself. I never had a problem for over two years with Attorney Christine Perkins, CPCS attorney, who won my Norfolk County case. I also have had since February 21, 2017 Attorney Jennifer Lokitis without any issues or problems.

11.    Judge Paula Clifford, Brockton District Court violated my constitutional rights and should have recused herself from my case. She sits in Brockton District Court and has on at least six occasions made decisions on my case. Her husband is a Massachusetts State Trooper. This is a clear conflict of interest and she has made rulings always siding with the State Police. I am to have a fair and impartial trial or hearing motions, etc. Most recently on June 12, 2018, Judge Paula Clifford said to my attorney, "I am not dismissing this case." She did the complete opposite of what Judge Neil Hourihan ordered on January 11, 2018, "No further continuances."

12.    Judge Antoinette Leoney, Massachusetts Court Judge. On March 9, 2016, Judge Leoney violated my constitutional rights Amendment VIII, "nor cruel and unusual punishments inflicted." She was the Judge who was at my arraignment at Stoughton District Court. I have not record to speak of, no court defaults, no violent charges. Judge Leoney put me on a $1,500 cash bail, would not cancel warrant in error, put me on a GPS monitor, mental health evaluation and follow-up treatment of two times weekly, refrain from electronic communication with State Police and victim, have no contact with State Police, report in person weekly to Probation then she notes I need medical attention on March 23, 2016. Judge Leoney refused to have my GPS ankle bracelet taken off despite her own words, he needs medical attention. Then the pain and agony to try and drive with a broken right foot (untreated) and severed cubital right hand, dislocation right elbow. I was in a sling for a very long time. I have to go through surgery. It was very painful to drive and against my surgeon's advice. My lawyer filed an emergency petition with the Supreme Judicial Court to have my MRI and remove bracelet for the exam on April 13, 2016. SJC Court ruled for me and I had my MRI the next day, April 14, 2016. I suffered a left foot fracture with torn ligaments. I was placed in a cast. Driving and walking was almost impossible. One time when Judge Leoney denied me medical care, she shouted from her bench, "I suggest you find another doctor." She still ordered me to come in each week. Only on May 3, 2017 was it amended to report to Probation once every two weeks. Then on July 19, 2017, Judge Hernam told me to report to Probation once a month. By phone, Judge Leoney also

7

told me and put it in writing to stay away from the State Police and not to stop for them and to tape it on my window.

13.     Judge Robert Ziemion, Presiding Judge at my jury trial, March 6, 7, 8 and 9, 2018. He violated by First Amendment rights of the Constitution of the United States. At the start of my trial, I asked him if I could speak under my First Amendment Rights. He said, no. I said, why? No Judge has ever denied me that right. He then said, I find you in contempt and you will serve 90 days in the Dedham Jail. Just prior to this, I fell off my chair and injured my arm. The Judge said he would stay the sentence to March 6th and March 7th. I went home on March 8, 2018. We had a major snowstorm. My brother, who was bringing me to Court, could not make it. I called my lawyer and told her I would be late. The Judge wanted us there at 10:00 a.m. I had to try and get someone to shovel me out. I was in contact with my lawyer, and she told the Court I would be there by 10:45 a.m., which I was in pain in a cast, arm sling and a cone. When I walked into the courtroom, the Judge told me I was going to jail for being 45 minutes late. My lawyer pleaded with the Judge. All my disabilities and to no changing the Judge's mind, he put me in the court lockup for lunch or court recess. He made my medical condition worse. The next day was Friday. Against my lawyer's wishes, I took the stand. After a short jury duration, I was found not guilty of all charges. The Judge seemed upset with the jury. The jury smiled and wished me a nice weekend. When the jury left, he said I was going back to jail. My attorney successfully argued he did not follow the law on contempt. I was to have a hearing before and after and why did he let me go home the first two days, back to jail I go, and he said come back Monday and you will get your hearing. I went to jail and returned on Monday, March 12, 2018. Another Judge heard the case and let me go home.

14.     Arthur Tobin, Clerk of Courts, Quincy District Court. On or about March 11, 2016, I received a phone call from an attorney. I knew his son is a state trooper. Attorney Terrance McCarthy told me that Arthur Tobin had told almost the entire Quincy District Court that I was arrested and beaten up and his son, Trooper Bruce Tobin, was the trooper who spearheaded my arrest. Arthur Tobin told several people, he wishes they shot me.

15.     Attorney Terrance J. McCarthy called me again several days later and said, no one can believe this of you but John (Attorney McCarthy's son) told his father, "You better tell Kevin he is a marked man with the State Police including his cousin Solimini."

16.     John McCarthy, Massachusetts State Trooper was not diligent in his duties when he heard I was a marked man with the State Police. He should have immediately gone to his superiors to report this threat on me.

17.     Mr. Daryl Manchester, Clerk of Courts at Wareham District Court. When I was arrested on March 8, 2016 and being booked by the State Police, I was told I would be bailed out by a Clerk Manchester. Shortly after, I saw some people being led to the front of the barracks. I could hear a man talking who sounded like a clerk. After a while, I asked one of the troopers where is the clerk? He replied, "Oh, don't worry, he said you're not bailable." I said, "Why? I have no record. This is a conspiracy against me." I said, "I want to see the clerk." They said he left. After about two weeks, I called and asked to speak to the Clerk Manchester at Wareham District Court. He refused to speak to me. I called at least five other courts and they all said I

was bailable. Only under certain conditions, I would not be bailable. I told them the charges and no record. They said I was bailable. I kept a log of who and when I spoke to from other courts that do bails. I was also told everyone that does bails has to keep a bail book log with this information. I called Mr. Manchester. Again, this time he did not have any idea who I was. When I told him, he said to me, "Don't you ever call me again" and hung up. My Amendment VIII was violated of the Constitution.

18.     Sergeant Cruz, Middleboro State Police Barracks. After I was bailed from jail and I returned to my home after approximately three days of not being there, I learned that all my legal medications were missing from my kitchen. These medications are serious medications, some are for blood pressure. Stolen from my house were the following medications: Toprol 50 mg., Cymbolta 60 mg., Nitrostat 4 mg., Xanax 1 mg., Percocet 5-325 mg., Lipitor 40 mg. and Vasotec 10 mg. My elderly brother had to go two times to the Middleboro State Police Barracks. I had to go almost 48 hours without any of my life-saving medications that could have caused seizures, heart attack, death. When my brother came back with all my pills, he told me how rude and sarcastic Sgt. Cruz was, stating he is the only trooper authorized to give back medications. When Trooper Cruz made my brother sign for them, he gave them back in an open evidence bag, not sealed, not signed for and not counted. He told my brother if anything is missing, it's on you. The minute I looked at my Percocet bottle, I could tell there were a lot missing. I had taken by the State Police 120 Percocets 5/325 missing from the bottle. Amendment IV of the Constitution which states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizes, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

19.     Dennis A. Maietta, Chief Probation Officer at Stoughton District Court violated my constitutional rights, civil and human rights. Mr. Maietta was very involved in my ankle bracelet being rigged on June 4, 2017. In fact, Mr. Maietta told me, "What can you do? I have my years here, I can leave whenever I want." It is a known fact, a few days after June 4, 2017 when I had to check in with my probation officer, Yves Barthelemy, at Stoughton District Court, he told me that he received a call from "ELMO." The letters that stand for electronic monitoring located in Clinton, Mass. They are state employees that work 24/7 to monitor the GPS ankle bracelets. Mr. Maietta said to me on March 15, 2018 with my brother as a witness that he has a hit out on me when we went to get the $1,500 bail money back. My probation officer told me that he was told that I was just heading into Rhode Island. I said, "Show me on your computer screen." He said, "Oh, I erased it." I said, "I am being accused of something I never did." I also questioned why I was woken up so much during the night and told to walk outside until "ELMO" can get a signal on me. On two occasions there were snow storms. I had to walk through in my backyard and in my street with my cell phone. I was upset over being accused of driving somewhere I could not possible be at. So I went to my bank and got a printout of how I was at Burger King drive through at Moody Street in Waltham, Mass. At approximately the same time, they accused me of being out of state. Further, the Judge sets the ankle bracelet conditions but in my case the Probation Department took it upon themselves and would "entrap" me into something I never did. Another time, I went to the Dedham Probate Court and the GPS went off. I was with my brother. He was upset. When I called the "ELMO" center, they told me I had zone violation and I said for what? And they said you're within 500 feet of the victim's office. I said he is a state trooper. I was never told I could not come here. I have to come to this

court. I am my dead mother's Executor of her estate and this is the proper court. I could not even settle my mother's estate. I had to have someone else do it for me. When I complained to Mr. Maietta, he said, 'If you don't like it, go to jail instead.' He has violated my constitutional rights, civil and human rights. Mr. Maietta also falsely printed a CORI on April 21, 2016 charging me on March 9, 2016 with theft of a firearm. He claimed it was an error.

20.     Robin E. Vaughn, Clerk Magistrate of Stoughton District Court, knew what was going on and how I was harassed on two occasions to make fun of me when I would enter the courthouse. The court personnel would stare at me with my cone, foot cast and arm sling walking up the handicap ramp. As soon as I entered the door, they would make a loud PA announcement and say, "Mr. Clapp has just entered the building." This was done twice to me. In August, 2017, everyone claimed they had not PA system in the building, but I was told by a former employee that worked there for years that they have lied to me and she herself was called on the PA to the courtroom once by pressing certain numbers on the phone to turn it into a PA system. I was humiliated and this violated my civil and human rights and has set me back in counseling.

21.     Mr. James Flanagan, First Assistant Clerk Magistrate of Stoughton District Court on March 8, 2016 engaged in signing an arrest warrant to have me arrested for all charges with no evidence or merit. Perjury was committed by Mr. Flanagan. He knew or should have known that being charged with stalking is the only legal way they could have gotten an arrest warrant for me. Mr. Flanagan conspired to commit perjury so I would be falsely accused of all crimes that I never did. In fact, the victim himself was at Hingham District Court getting a 258E Civil Harassment Prevention Order against me. The victim in his own handwriting on the same day, March 8, 2016, signed under the penalties of perjury that his attached affidavit was true and to the best of his knowledge there was not one single wording of stalking from the victim himself. In fact, on the victim's application where they ask him are there any prior or pending actions between the Plaintiff and the Defendant, he checks yes in the box. Then the application asks to list court and charges. He lists threats – Stoughton District Court – no mention of any stalking. In fact, even the Judge who issued the civil order asked why his wife is not taking one out since the Defendant was charged with threats to kill her. He had no answer for the Judge. Also, in Part D, the victim never checked the box for criminal stalking and being a Mass. State Trooper Detective in Homicide Unit, I find this strange. These are very serious crimes that I was falsely charged with. This has violated my constitutional rights, civil and human rights.

22.     Mr. Edward Dolan, Massachusetts Commissioner of Probation. On numerous dates from the time of my first arrest until I was found not guilty of all crimes, Mr. Dolan would conspire with Dennis A. Maietta, the Chief Probation Officer at Stoughton Court. I reported that on March 15, 2018 on two occasions while with my brother to get the $1,500 bail money back that Mr. Maietta said he had a hit out on me. This is in violation of my constitutional rights, civil and human rights.

23.     Diane Fasano, Massachusetts Deputy Commissioner of Probation Department for "ELMO." Since the time of my arrest and the placement of the GPS ankle bracelet in March, 2016, I called Ms. Fasano on the problems I was having with the ankle bracelet. I missed her phone call. She left me her cell phone number. Whenever she did answer the phone, she said to

me, "You should be in jail. I would love to see you violate your probation." I believe she also conspired to have my ankle bracelet rigged. She violated my constitutional rights, civil and human rights.

24.     Officer Kathryn McCarron, Westwood Police Department testified at my trial for the Commonwealth that she was one of the reporting officers on August 24, 2013 in regards to my 98-year-old mother being assaulted the night before by a nurse's aide. She admitted under oath that my mother was of sound mind and she believes me that I did see my mother attacked. She agreed the Westwood Police report did state that an assault and battery did occur to my mother but yet she offered no compelling reason why the nurse's aide was not charged in Court with a crime against my mother. Officer McCarron failed to follow through on her job. She violated her own oath to serve and protect, and I believe she was told not to prosecute this case but her heart wanted to.

25.     Police Chief Silva, Westwood Police Department. I believe he conspired to have no charges be brought against the nurse's aide who beat my mother for reasons only known to them. Their own police report clearly states that an assault and battery did in fact occur on my mother but I believe because the Police Chief did not like me, so he violated my constitutional rights, civil rights and human rights and made my 98-year-old mother suffer and die.

26.     Mr. George Brewster, Brewster Ambulance owner conspired against me and became verbally abusive around March, 2016. Mr. George Brewster told me that he had terminated Stephen Nickerson who on March 8, 2016 while tending to my injuries sustained by the State Police was assaultive towards me, when they put me on the stretcher. As Paramedic Nickerson and Sgt. Mark Cohen of the Middleboro State Police Barracks picked me up to load me into the ambulance, they started to laugh and tip my stretcher over and called me a "fat fuck." Once inside the ambulance, they made jokes about me as I was handcuffed and ankle shackled to the stretcher. Sgt. Mark Cohen said to Paramedic Nickerson, "Want to run an IV line with cyanide to knock him out?" Nickerson replied, "If we had any." When we arrived at the hospital, they took out my stretcher, they did not tip it but they did call me a "fat fuck" again. This is a violation of my constitutional rights, civil rights and human rights. Also, it is a violation of the American with Disabilities Act. Further, Sgt. Mark Cohen laughed as he pricked me in my arm with some sort of a needle and my arm later turned black and blue. I considered this an outrageous act of assault and battery with a dangerous weapon. Mr. George Brewster stated to me that he asked the other paramedic, Mr. Joseph Dawicki, what had happened and Paramedic Dawicki verified I was telling the truth. Mr. George Brewster stated to me he did not need to call me because he had an employee verify my story and with that, he terminated Paramedic Nickerson.

27.     Attorney Kevin Mullen, Special Assistant Prosecutor for Norfolk County District Attorney's Office violated my Constitutional Amendment VIII – "Excessive bail shall not be required." At my arraignment on March 9, 2016, Attorney Mullen knowing I had no criminal record or history of violence had asked the Judge to hold me on $25,000 cash bail. Then Attorney Mullen increased it to $50,000 arguing that the victim is a state trooper. After the Judge reviewed my record and heard the true story of what happened to me, the Judge set bail at $1,500 cash with conditions. Mr. Mullen numerous times committed perjury at many court

11

appearances saying he has spoken to the alleged victim, Trooper John Fanning, about this case. Further, Attorney Mullen argued at every motion hearing that "venue" was proper in Norfolk County. On December 21, 2016, he whispered to Judge Thomas when my attorney had turned her face towards me and was talking to me. Attorney Mullen said quietly to the Judge "Trooper Fanning was working at his office when he read the phone texts. His office is in Canton, that's why we are in Norfolk County with this case. On September 14, 2016, Attorney Mullen argues the same venue story with Judge Richard Savignano who recused himself from the case. Before he made any decisions because he realized after he read the reports that he knew one of the state troopers. So at the side bar, he explained his situation and Judge Savignano did the paper thing by recusing himself from the entire case. By the actions of Attorney Mullen, he claimed he never spoke to the victim and only spoke and met the victim at the March 6, 7, 8, and 9 jury trial. How would Attorney Mullen be aware of where Trooper John Fanning was at his office or his home in Hanover if he did not speak to him prior to trial? There seems to be a perjury issue at hand. It would make no sense that Attorney Mullen would be aware of where Trooper Fanning was without speaking to him long before the March, 2018 jury trial in Dedham District Court. By Attorney Mullen's conduct, he violated Amendment VI – "By an impartial jury of the state and district wherein the crime shall have been committed which district shall have been previously ascertained by law." Venue is a fact that needs to be determined before a trial, not at a trial or the Defendant's rights have been violated. At the jury trial in March 2018, Attorney Mullen and Trooper Fanning both agreed that this was the first time they ever spoke or met each other. In fact, under cross examination by defense lawyer, Trooper Fanning admitted under oath he looked at my texts at his home in Hanover, Plymouth County, making this entire case of venue built on perjury.

28.     Mr. Leo J. Murray, The Commonwealth's sole witness to the allegation, he reported on a 911 call which he made two times, the first call was from a pay phone in East Boston and he said there is no emergency. Mr. Murray only mentioned I was in a rage and mentioned killing Trooper John Fanning and his wife on the second phone call from a pay phone in South Boston. Mr. Murray apologized to the jury saying he never meant for this case to go so far. He wished me good luck and put his hand on my shoulder and said, "Fanning paid me $100 to do this." Mr. Leo Murray has committed perjury to the State Police and to the courts and has engaged in a conspiracy and also filed a false police report.

29.     Trooper Ronald Solimini had told Trooper John McCarthy that I am a marked man with the State Police putting me in further fear.

30.     Trooper Vincent Noe engaged in a pattern of contact with other troopers to put me in fear and conspired against me with false criminal charges.

31.     On Monday, March 7, 2018, I called the State Police Internal Affairs office to report this matter of Leo Murray calling me the night before intoxicated and to report that Mr. Murray said to me Little John Fanning (meaning Trooper John Fanning) hid my case under the rug. I spoke to Lt. Gerard Mattoliano and Lt. Michael Richards by way of their speaker phone. They were very rude to me and said Trooper Fanning is clear of any wrongdoing but we will send you out a complaint form. You will need them. After I got home from jail, I received an

envelope with 10 complaint forms inside.  I took this as sarcasm since the next day was when I was ambushed and beaten up.

32.     Trooper John M. Fanning engaged in filing a false police report, committing perjury on a court witness stand, engaged in a series of events meant to protect his job by conspiring with Leo Murray and paying him money to make false 911 calls and to report a crime that never took place.

33.     Trooper Bruce J. Tobin committed perjury on police reports and lied under oath, took out a phony arrest warrant without the knowledge of the alleged victim, Trooper John M. Fanning, conspired to violate my constitutional rights, civil and human rights, police brutality, engaged in police misconduct, false arrest, malicious prosecution, used excessive force on the Plaintiff to cause him permanent and serious injury, false imprisonment, failure to intervene, failed to identify themselves as police officers, showed no authority of the badge, broke my eyeglasses on my face, spit on me, kicked me, threw hot coffee on me.

34.     Trooper Scott Kearns committed perjury on his reports, broke into my home and stole all my legal drugs.  When I got them back, 120 Percocets were missing, false arrest, used excessive force, police brutality, kicked me all over, false imprisonment.

35.     Sgt. Brian Brooks committed perjury on his reports, broke into my home and stole all my legal drugs.  When I got them back, 120 Percocets were missing, engaged in false arrest and false police report, used excessive force, police brutality, kicked me all over, false imprisonment.

36.     Trooper Andrew Mason refused me to make a phone call, engaged in a conspiracy, committed perjury.

37.     Trooper Andrew DaSilva refused me to make a phone call, engaged in a conspiracy, committed perjury.

## RELIEF SOUGHT

WHEREFORE, the Plaintiff prays that this Honorable Court enter such other and further relief as this Honorable Court may deem just, fair and proper.  The Plaintiff demands Judgment against each of the Defendants for each of the pleadings stated for damages sustained and the pain and suffering endured and court costs, any attorney fees, compulsory and punitive damages with statutory interest.

## THE PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted,

Kevin S. Clapp, Pro Se
79 Brookville Avenue
Brockton, MA  02302
(617) 413-2770

Dated:  March 6, 2018