UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KEVIN S. CLAPP, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MARK COHEN, JOHN FANNING, | * | Civil Action No. 18-cv-10426-ADB |
| VINCENT NOE, BRUCE TOBIN, | * | |
| BRIAN TULLY, SCOTT KEARNS, | * | |
| BRIAN BROOKS, AND JAMES | * | |
| FLANAGAN, | * | |
| | * | |
| Defendants. | | |

# **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

For the reasons stated below, the Court: (1) dismisses the action against Governor Charles Baker, Secretary of Public Safety Daniel Bennett, District Attorney Michael Morrissey, Commissioner of Probation Edward Dolan, Chief Probation Officer Dennis Maietta, Deputy Commissioner of Probation Department Diane Fasano, State Police Colonel (ret.) Richard McKeon, State Police Colonel Kerry Gilpin, Sheriff Joseph McDonald, Jr., Hon. Paul Dawley, Hon. Michael Vitali, Hon. Julie Bernard, Hon. Steven Thomas, Hon. Paula Clifford, Hon. Antoinette Leoney, Hon. Robert Ziemian, Clerk Arthur Tobin, Clerk Daryl Manchester, Clerk Robin Vaughn, Terrance McCarthy, George Brewster, Stephen Nickerson, Sgt. Cruz, Trooper Richard Solimini, State Police Lieutenant Gerard Mattaliano, State Police Lieutenant Michael Richards, Trooper John McCarthy, Trooper Andrew Da Silva, Trooper Andrew Mason, Leo Murray, Assistant District Attorney Kevin Mullen, Police Chief Silva and Officer Kathryn McCarron; and, (2) issues summonses as to defendants, Trooper Mark Cohen, Trooper John

Fanning, Trooper Vincent Noe, Trooper Bruce Tobin, Trooper Brian Tully, Trooper Scott Kearns, Trooper Brian Brooks, and First Assistant Clerk Magistrate James Flanagan.

## I. BACKGROUND

### A. Procedural History

On March 5, 2018, *pro se* Plaintiff Kevin S. Clapp ("Clapp") filed a seven-page complaint against 79 defendants. [ECF No. 1]. The complaint presented a confusing narrative of Clapp's interactions with politicians, law enforcement, the state courts and others. On March 9, 2018, after being granted *in forma pauperis* status, Clapp was ordered to file an amended complaint that complied with the basic pleading requirements of the Federal Rules of Civil Procedure. [ECF No. 7]. On September 21, 2018, after several extensions were provided, Clapp filed a 14-page amended complaint against 41 defendants covering multiple, independent claims against several groups of defendants as follows: (1) the Governor; (2) the Secretary of Public Safety; (3) the Plymouth County Sheriff; (4) Norfolk County District Attorney and personnel; (5) Massachusetts State Police personnel; (6) Westwood police personnel; (7) state court judges; (8) a clerk magistrate; (9) state court clerks; (10) state probation personnel; (11) a private ambulance owner and former employee; (12) a witness at Clapp's criminal trial; and (13) a private attorney. [ECF No. 21 ("Am. Compl.")].

### B. Facts Alleged in the Amended Complaint[1]

The Court has distilled Clapp's Amended Complaint to its apparent core claims which are described more fully below.

---

[1] The facts from the Amended Complaint are taken as true, only for purposes of screening the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court makes no findings as to their veracity.

1. <u>Clapp Attempts to "Get Justice" for his Mother's Death</u>

On August 23, 2013, Clapp's mother was allegedly beaten by a nurse's aide at a nursing home. Am. Compl. ¶¶ 1, 24–25. She passed away from her injuries on November 21, 2013. <u>Id.</u> Clapp believes that Westwood Police officer Kathryn McCarron and Westwood Police Chief Silva unlawfully failed to bring charges against the alleged attacker. <u>Id.</u> ¶¶ 24–25. Clapp asserts that McCarron was told by an unidentified person not to prosecute the case, and that Chief Silva was motivated not to bring charges, possibly because he "did not like [Clapp]." <u>Id.</u> Clapp met Governor Charlie Baker three times, seeking his assistance, and on the last occasion, in October 2017, Baker told Clapp that he had chosen not to assist him. <u>Id.</u> ¶ 1. Clapp now claims that, instead of helping him, Baker engaged in "a campaign at retaliation through numerous state agencies, in which [Clapp] was . . . told by several upper level individuals that Governor . . . Baker is out to get [Clapp.]. <u>Id.</u>

In January 2014, Norfolk County District Attorney Michael Morrisey approached Clapp outside of a church and said, "Your days are numbered," and, "If . . . you were smart you would drop your mother's murder case." <u>Id.</u> ¶ 2. He also told Clapp that he would "go to the very end to protect his elected job position and his department" against anything Clapp made public. <u>Id.</u> ¶ 2.

2. <u>Clapp is Arrested and Charged with Threatening to Kill a State Trooper and Spouse</u>

a. <u>The Warrant</u>

On March 8, 2016, First Assistant Clerk Magistrate James Flanagan of the Stoughton District Court signed an arrest warrant for Clapp on the purportedly meritless charges of

threatening to kill State Trooper John Fanning and his wife.² Id. ¶¶ 21, 27–28. Flanagan "conspired to commit perjury so [Clapp] would be accused of all crimes that [he] never did." Id. ¶ 21.

### b. The Arrest

Clapp was arrested, apparently at his home, on March 8, 2016. Id. ¶ 18. With respect to the arrest, as best the Court can discern, Clapp alleges that State Troopers John M. Fanning, Bruce J. Tobin, Brian P. Tully and Scott Kearns "used excessive force, violated their own use of force policy, never showed any arrest warrant . . . , never identified themselves as state police officers, showed no badges, guns, flashlights or anything to show their authority of a badge." Id. ¶¶ 2–4. Tobin, and possibly other officers, broke Clapp's glasses, spit on him, kicked him and threw hot coffee on him. Id. ¶ 34. The Amended Complaint is unclear as to which other officers were involved, but states, "Also, Trooper Vincent Noe, Middlesex District Attorney's Office." Id.

### c. The Booking

While being booked by the State Police at the Middleboro State Police Barracks, Clapp was told by an unnamed individual that he would be bailed by Clerk Daryl Manchester. Id. ¶ 17. After hearing someone in the barracks "who sounded like a clerk," Clapp asked an unidentified Trooper, "Where is the clerk?" Id. The unidentified Trooper responded, "Oh don't worry, he said you're not bailable." Id. Clapp told the officer that it "was a conspiracy" because he had no record. Id. Clapp claims that based upon his discussions with other

---

² Clapp makes allegations, apparently on personal knowledge, of alleged criminal acts and other actions by Fanning, that intimate some prior interaction or acquaintanceship between Fanning and Clapp. Am. Compl. ¶3.

unnamed clerks of other courts that he should have been bailable. Id. ¶17. Clapp claims that when he called Clerk Manchester two weeks after the arrest, Clerk Manchester refused to take his call and eventually when Clapp did manage to reach him, Clerk Manchester told Clapp, "Don't ever call me again," and hung up the telephone. Id.

### d. Transport to the Hospital

At some point on March 8, 2016, Clapp was brought from the Middleboro State Police Barracks to a hospital because of injuries sustained during his arrest. Id. ¶ 26. Brewster Ambulance employee Stephen Nickerson and State Police Sergeant Mark Cohen loaded Clapp, who was handcuffed and shackled to a stretcher, onto the ambulance. Id. As they loaded Clapp, "they started to laugh and tip [the] stretcher over and called [Clapp] a 'fat fuck.'" Id. In the ambulance, "they made jokes" about Clapp. Id. Cohen said to Nickerson, "Want to run an IV line with cyanide to knock him out?" Id. Nickerson replied, "If we had any." Id. Upon arrival at the hospital, Clapp was unloaded, and they called him a "fat fuck" again. Id. Clapp alleges that Cohen laughed as he pricked Clapp in the arm with a needle, and that his arm hurt and turned black and blue. Id.

### e. Hold Over at Plymouth County Jail

On the night of March 8, 2016, Clapp was sent to the Plymouth County House of Correction and Jail for one night. Id. ¶6. Clapp claims this was an error, and that while there he was stripped of his clothes, given green plastic to wrap himself, and was made to sleep on a 12-inch wide bench, with no pillow or blanket. Id. Clapp alleges that Sheriff Joseph McDonald was "negligent" in not properly supervising his jail personnel on that occasion. Id.

f.  The Arraignment

Clapp was arraigned on March 9, 2016 before state District Court Judge Antoinette Leoney.  Id. ¶12.  At Clapp's arraignment, Assistant District Attorney Kevin Mullen, even knowing Clapp had no prior criminal record, sought bail of $50,000 because the victim was a state trooper.  Id. ¶¶ 12, 27.  Judge Leoney set bail at $1,500, and placed Clapp on GPS monitoring and other conditions.  Id. ¶ 12.

3.  Clapp is Bailed, Accuses State Police of Stealing His Percocets

On or about March 11, 2016, Clapp was bailed from jail.  Id. ¶ 18.  Upon returning to his home, Clapp found that his prescription medications were missing.  Id.  Clapp claims that his brother returned to the Middleboro State Police Barrracks twice to have his property returned. Id.  He claims that Sergeant Cruz returned certain medications to Clapp's brother in an unsealed evidence bag, and told Clapp's brother that if anything is missing, it is "on you."  Id.  Clapp asserts that 120 Percocets were missing, and claims that Trooper Scott Kearns and Sgt. Brian Brooks "broke into my home and stole all my legal drugs."  Id. ¶¶ 18, 34–35.

On March 11, 2016, Clapp received a call from an attorney, Terrance J. McCarthy. According to McCarthy, Quincy District Court Clerk Arthur Tobin told "almost the entire Quincy District Court that [Clapp] was arrested and beaten up and that his son, Trooper Bruce Tobin, was the Trooper who spearheaded [Clapp's] arrest."  Id. ¶ 14.  According to Attorney McCarthy, Clerk Tobin told several people that he wished "they shot [Clapp]."  Id. ¶ 15.  A few days later, he received another telephone call from Attorney McCarthy, who had been told by his son, "You better tell [Clapp] he is a marked man with the State Police including his cousin Solimini."  Id.

6

### 4. Clapp's Interactions with the Massachusetts Probation Department

Clapp alleges problems with probation personnel stemming from his GPS bracelet, which he claims was rigged. Id. ¶ 19. In support, Clapp provides examples of technical problems with his GPS – the bracelet apparently reported him being in a different location than he was, and he was required to go outdoors in the winter during a storm to get the signal to work properly. Id. ¶ 19. Clapp also broadly claims that he was treated poorly by probation personnel. For example, Clapp alleges that Edward Dolan, the Massachusetts Commissioner of Probation, conspired with Dennis Maietta, the Chief Probation Officer at Stoughton District Court, although without any factual elaboration. Id. ¶ 22. Clapp asserts that he reported, apparently to Dolan, on March 15, 2018, that Maietta, "said he had a hit out on" Clapp on two occasions when he attempted to obtain his bail money. Id. Clapp also claims that Diane Fasano, a Deputy Commissioner of Probation, told Clapp, "You should be in jail. I would love to see you violate your probation." Id. ¶ 23. Maietta also said to him at some point, "What can you do? I have my years here, I can leave whenever I want." Id. ¶ 19. On another occasion, Clapp complained to Maietta about a zone violation when he went to a probate court, which was apparently within 500 feet of a victim's office. Id. Maietta told him, "If you don't like it, go to jail instead." Id. Maietta also printed a CORI form that had an error on it. Id.

### 5. Clapp Found Not Guilty

Almost two years to the day of his arrest, Clapp was tried before a jury. Id. ¶ 13. The trial took four days, and on March 9, 2018, he was found "not guilty" on all charges. Id. Clapp was also separately charged for resisting arrest. Id. ¶ 9. The disposition of that criminal matter is unknown.

## II.     DISCUSSION

Clapp's Amended Complaint suffers from the same defects as his original complaint, and still does not comply with Rule 8 or Rule 10 of the Federal Rules of Civil Procedure.  It presents a confusing narrative that asserts causes of action against unrelated parties.   Most of the factual allegations are not well-pleaded.  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).  "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), and "a well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable" and "a recovery is very remote and unlikely."  Id.   While "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).   The complaint must contain sufficient factual matter, accepted as true, to state a plausible claim on its face."  Id.   The Supreme Court has described "facial plausibility" this way:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully….where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 678 (citations omitted).

Turning to the Amended Complaint, Clapp's claims seemingly arise from a March 8, 2016 arrest, and the subsequent detention and prosecution that resulted in Clapp's acquittal in March 2018. He claims mistreatment at every step of the criminal justice process. Clapp asserts federal jurisdiction under 28 U.S.C. § 1331 for civil rights claims under 42 U.S.C. § 1983 and violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* He further asserts that the Court has diversity jurisdiction under 28 U.S.C. § 1332. Because Clapp is proceeding *in forma pauperis*, his complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B). In connection with this preliminary screening, a plaintiff's *pro se* complaint is construed generously. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).

### A. The Court is without Diversity Jurisdiction under 28 U.S.C. § 1332

Federal courts have jurisdiction over suits premised only on state law where there is diversity of citizenship between the adversaries and the amount in controversy exceeds a threshold amount of $75,000. 28 U.S.C. § 1332; Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006). Diversity jurisdiction requires complete diversity of citizenship between all plaintiffs and all defendants—that is, the state of citizenship for each plaintiff must be different from that of each defendant. Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005). Here, Clapp, a Massachusetts citizen, alleges claims against at least one Massachusetts citizen. Because the parties are not completely diverse, there is no diversity jurisdiction in this action.

B. Clapp's Federal Claims under 28 U.S.C. § 1331

1. Clapp's Americans with Disability Act Claims

Here, although Clapp mentions that he is disabled three times in the complaint, he fails to identify which subsection of the Americans with Disabilities Act, 42 U.S.C. §§ 12111 *et seq.*, he is proceeding under. His references to a purported violation of the Americans with Disabilities Act, which seem to concern the ambulance ride to the hospital during which Clapp was mocked and pricked with a needle, suggest a claim under 42 U.S.C. § 12182(a).[3] Amend Compl. ¶ 26. Even assuming that Clapp could otherwise state a claim concerning his ambulance ride, Clapp's claim fails because he seeks only monetary damages, which are not available under Title III of the ADA. Goodwin v. C.N.J., Inc., 436 F.3d 44, 50 (1st Cir. 2006); Blake v. Southcoast Health Sys., Inc., 145 F. Supp. 2d 126, 131 (D. Mass. 2001). Therefore, Clapp has failed to state a claim upon which relief can be granted, and all claims under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.*, are DISMISSED.

2. Clapp's 42 U.S.C. § 1983 Civil Rights Claims

Clapp purports to bring civil rights claims under 42 U.S.C. § 1983. "Section 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation,

---

[3] Title III provides in pertinent part that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

custom, or usage, of any State." Klunder v. Brown Univ., 778 F.3d 24, 30 (1st Cir. 2015) (citations and quotations omitted). "To make out a viable section 1983 claim, a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued." Id. (quoting Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir.2011)).

> a. Official Capacity Claims for Monetary Damages are Barred by Eleventh Amendment Sovereign Immunity and 42 U.S.C. § 1983

Clapp's claims for official capacity monetary damages claims against state officials are barred under Eleventh Amendment Immunity and 42 U.S.C. § 1983. "[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment" to the United States Constitution. Davidson v. Howe, 749 F.3d 21, 27 (1st Cir. 2014) (quoting Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "This is true whether the named defendant is the state itself or, as here, a state official in her official capacity." Id. Furthermore, to the extent that Clapp seeks monetary relief for actions taken in any person's "official" capacities, the claims are not cognizable under 42 U.S.C. § 1983, see Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989) (although state officials are literally persons, a suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office), because government officials in their official capacity are not "persons" for purposes of 42 U.S.C. § 1983. Id. Accordingly, to the extent the Amended Complaint seeks monetary damages against any of the state-employee defendants in their official capacity, such claims are barred under the Eleventh Amendment and 42 U.S.C. § 1983.

11

> b. Personal Capacity Claims
>
>> i. *Respondeat Superior* Claims against Governor Charlie Baker, Secretary of Public Safety Daniel Bennett, District Attorney Michael Morrissey, Sheriff Joseph D. McDonald, Jr., State Police Colonel Richard McKeon (ret.), State Police Colonel Kerry Gilpin, Clerk Robin Vaughn and Massachusetts Commissioner of Probation Edward Dolan are Dismissed

Clapp's individual 28 U.S.C. § 1983 claims—to the extent they are plausibly alleged and not conclusory—against Governor Charlie Baker, Secretary of Public Safety Daniel Bennett, District Attorney Michael Morrissey, Sheriff Joseph D. McDonald, Jr., State Police Colonel Richard McKeon (retired), State Police Colonel Kerry Gilpin, Clerk Robin Vaughn and Massachusetts Commissioner of Probation Edward Dolan are, at most, *respondeat superior* claims. "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)). "Absent participation in the challenged conduct, a supervisor can be held liable only if (1) the behavior of his subordinates results in a constitutional violation and (2) the supervisor's action or inaction was *affirmatively linked* to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence of the supervisor amounting to *deliberate indifference*." Hegarty v. Somerset Cty., 53 F.3d 1367, 1379–80 (1st Cir. 1995) (emphasis in original, punctuation omitted) (quoting Lipsett v. University of P.R., 864 F.2d 881, 902–03 (1st Cir. 1988)). Here, the few non-conclusory allegations concerning Governor Charlie Baker, Secretary of Public Safety Daniel Bennett, District Attorney Michael Morrissey, Sheriff Joseph D. McDonald, Jr., State Police Colonel Richard McKeon (ret.), State Police Colonel Kerry Gilpin, Clerk Robin Vaughn and

12

Massachusetts Commissioner of Probation Edward Dolan, show only a supervisory linkage, which is insufficient to make out respondeat superior claims. Accordingly, these claims and defendants are DISMISSED

                ii.       Claims against Judges are Dismissed

Clapp's claims against the Hon. Paul Dawley, Hon. Michael Vitali, Hon. Julie Bernard, Hon. Steven Thomas, Hon. Paula Clifford, Hon. Antoinette Leoney, and Hon. Robert Ziemian are all barred by the doctrine of absolute judicial immunity. "Absolute immunity from civil liability applies to any judicial officer for any normal and routine judicial act." Becks v. Plymouth Cty. Superior Court, 511 F. Supp. 2d 203, 206 (D. Mass. 2007). "This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding or how malicious the motive." Id. (citing Cleavinger v. Saxner, 474 U.S. 193 (1985)). "[T]he protection it affords applies even if the official 'acted maliciously and corruptly in exercising his judicial ... functions' or 'in the presence of grave procedural errors.'" Ives v. Agastoni, No. CV 15-30153-MAP, 2015 WL 9647559, at *3 (D. Mass. Dec. 14, 2015) (quoting Goldstein v. Galvin, 719 F.3d 16, 24 (1st Cir. 2013)), report and recommendation adopted No. 15-CV-30153-MAP, 2016 WL 79881 (D. Mass. Jan. 5, 2016). Clapp's plausible, non-conclusory allegations concerning the Massachusetts judges named in this action ultimately relate to judicial acts taken in connection with criminal court proceedings. Accordingly, all claims against Hon. Paul Dawley, Hon. Michael Vitali, Hon. Julie Bernard, Hon. Steven Thomas, Hon. Paula Clifford, Hon. Antoinette Leoney, and Hon. Robert Ziemian are DISMISSED.

### iii. Claims against Clerk Tobin are Dismissed

Clapp claims that Clerk Arthur Tobin told the Quincy District Court that Clapp had been arrested and beaten up, and that Tobin's son had arrested him. Am. Compl. ¶ 14. Tobin also purportedly said that he wished that Clapp had been shot. Id. Even if true, while distasteful, there is no alleged deprivation of a constitutional right, and therefore Clapp has not made out a claim under 42 U.S.C. § 1983. Accordingly, the claims against Clerk Arthur Tobin are DISMISSED.

### iv. Claims Against Clerk Manchester Are Dismissed

Clapp alleges that he was improperly denied bail by Clerk Daryl Manchester, and that he was told by an unnamed police officer that Clerk Manchester had told the officer that Clapp was not bailable on the night of his arrest. Am. Compl. ¶ 17. Clapp claims this was a conspiracy. Id. Without more, this does not rise to a plausibly pleaded violation of Clapp's constitutional rights sufficient to support a 42 U.S.C. § 1983 claim. Accordingly, all claims against Clerk Daryl Manchester are DISMISSED.

### v. Claims Against Assistant District Attorney Kevin Mullen Are Dismissed

Clapp's claims against Assistant District Attorney Kevin Mullen are barred by the doctrine of absolute prosecutorial immunity. The doctrine of absolute prosecutorial immunity protects any prosecutorial "actions that are 'intimately associated with the judicial phase of the criminal process.'" Van de Kamp v. Goldstein, 555 U.S. 335, 341 (2009) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). "The protections of absolute immunity, moreover, extend to actions that occur prior to a formal court proceeding and outside of a courtroom." Miller v. City of Boston, 297 F. Supp. 2d 361, 370 (D. Mass. 2003). Clapp's allegations against

Mullen relate to prosecutorial conduct during his arraignment and criminal case. Am. Compl. ¶ 27. Accordingly, as pleaded, all claims against Assistant District Attorney Kevin Mullen are DISMISSED.

### vi. Claims Against Westwood Police Officer Kathryn McCarron and Westwood Police Chief Silva are Dismissed

Clapp claims that on August 24, 2013, Westwood Police Officer Kathryn McCarron responded to the alleged assault of Clapp's 98-year-old mother. Id. ¶ 24. Clapp further asserts that McCarron did not bring charges against the attacker, because she was directed not to, and that she and Westwood Police Chief Silva conspired to have no charges brought against the attacker. Id. Even if the allegations are true, Clapp has no standing to bring a claim against these defendants. It is well-settled that "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619, (1973); see also Town of Castle Rock v. Gonzales, 545 U.S. 748, 768 (2005) ("the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations") (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189 (1989)); Nieves-Ramos v. Gonzalez-De-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990). Accordingly, Clapp has failed to plead the deprivation of a constitutional right, and these claims and defendants are DISMISSED.

> vii. Claims against Sgt. Cruz, Trooper Andrew Mason, Trooper Andrew Da Silva, Trooper Ronald Solimini, Trooper John McCarthy, Lt. Gerard Mattoliano, and Lt. Michael Richards are <u>Dismissed</u>

Claims against Sgt. Cruz, Trooper Andrew Mason, Trooper Andrew Da Silva, Trooper Ronald Solimini, Trooper John McCarthy, Lt. Gerard Mattoliano, and Lt. Michael Richards, are not plausibly pleaded and fail to comply with Federal Rule of Civil Procedure 8.

First, Sgt. Cruz allegedly provided an open evidence bag to Clapp's brother. Am. Compl. ¶ 18. Clapp does not accuse Sgt. Cruz of stealing his Percocets. <u>Id.</u>

Second, Clapp alleges that Mason and Da Silva "refused me to make a phone call, engaged in a conspiracy, committed perjury." <u>Id.</u> ¶¶ 36–37. These allegations are conclusory, speculative, and are insufficient to make out a claim under 42 U.S.C. § 1983.

Third, Clapp alleges that, apparently days after his arrest, Trooper Solimini told Trooper McCarthy, who told Attorney Terrance McCarthy, "you better tell Kevin he is a marked man with the State Police including his cousin Solimini," putting Clapp in fear and imposing a duty on McCarthy to inform his superiors. <u>Id.</u> ¶¶ 15–16, 29. These alleged statements are insufficient to plausibly plead a 42 U.S.C. § 1983 claim.

Fourth, Clapp alleges that Lt. Mattoliano and Lt. Richards were rude to him in response to his complaint about Trooper Fanning. He claims that they told him the day before Clapp's arrest that Trooper Fanning had been cleared of any wrongdoing, "but we will send out a complaint form. You will need them," and that he then received 10 complaint forms in the mail following his arrest. <u>Id.</u> ¶ 31. The above allegations do not plausibly plead a 42 U.S.C. § 1983 claim.

16

Where the claims against Sgt. Cruz, Trooper Andrew Mason, Trooper Andrew Da Silva, Trooper Ronald Solimini, Trooper John McCarthy, Lt. Gerard Mattoliano, and Lt. Michael Richards are not plausibly pleaded, the claims against these defendants are DISMISSED.

### viii. Claims against Attorney Terrance McCarthy are Dismissed

Clapp asserts that defendant Terrance McCarthy, an attorney, told him that Arthur Tobin had told others that Clapp had been beaten up and that Tobin wished that Clapp had been shot. Id. ¶ 14. McCarthy also told Clapp that his son had told him that Clapp was a "marked" man. Id. Even if true, there is no allegation that McCarthy acted under color of law or deprived Clapp of a constitutional right, as required by 42 U.S.C. § 1983. Accordingly, this claim and defendant are DISMISSED.

### ix. Claims against Witness Leo Murray are Dismissed

Clapp alleges that Leo Murray, a trial witness, was paid off by defendant Fanning to testify falsely in Clapp's criminal action. It is well-settled that a witness is entitled to absolute immunity for a civil damages action under Section 1983. Rehberg v. Paulk, 566 U.S. 356, 367 (2012) (Under Section 1983, "a trial witness has absolute immunity with respect to *any* claim based on the witness' testimony.") (citing Briscoe v. LaHue, 460 U.S. 325, 332–33 (1983)). Accordingly, this claim is DISMISSED. Moreover, Clapp has not alleged that Murray acted under color of law, and his allegations about the filing of a false police report and the commission of perjury are conclusory.

### x. Claims Against Probation Department Defendants

Clapp's claims against the Probation Department defendants fail to state claims upon which relief may be granted, even assuming the alleged statements were made to Clapp. For

17

example, the Amended Complaint does not allege that Maietta's statements were made as a true threat of murder-for-hire, rather than in jest, and there is no allegation that Clapp believed them to be true or reported Maietta to criminal authorities. As to Fasano, her hope that Clapp would violate the terms of his probation does not rise to the level of a violation of Clapp's civil rights under 42 U.S.C. § 1983. Clapp makes an unsupported jump from these terse interactions to his assertions that Maietta and Fasano somehow "rigged" his GPS bracelet. While the allegations of problems with his GPS bracelet are detailed, the allegations do not support a reasonable inference of wrongdoing. Accordingly, the claims against Maietta and Fasano are DISMISSED.

### xi. Claims Against Brewster Ambulance

Clapp avers that George Brewster, the owner of Brewster Ambulance, conspired against him, and that his employee Stephen Nickerson violated his constitutional, civil rights and human rights." Am. Compl. ¶ 26. There are no specific allegations against George Brewster other than that Brewster "became verbally abusive towards me." Id. Clapp's claims of being tipped in his stretcher, called names by Nickerson, and Nickerson's participation in an alleged inappropriate joke, does not rise to a constitutional violation as alleged. Moreover, because it appears that Clapp seeks only monetary damages against Brewster and Nickerson, his Americans with Disabilities Act claim fails. See Section 2(B)(1), *supra.* Accordingly, the claims against Nickerson and Brewster are DISMISSED.

## III. CONCLUSION AND ORDER

1. For the reasons stated herein, all claims against defendants Governor Charles Baker, Secretary of Public Safety Daniel Bennett, Commissioner of Probation Edward Dolan, District Attorney Michael Morrissey, Chief Probation Officer Dennis Maietta, Deputy

Commissioner of Probation Department Diane Fasano, State Police Colonel (ret.) Richard McKeon, State Police Colonel Kerry Gilpin, Joseph McDonald, Jr., Hon. Paul Dawley, Hon. Michael Vitali, Hon. Julie Bernard, Hon. Steven Thomas, Hon. Paula Clifford, Hon. Antoinette Leoney, Hon. Robert Ziemian, Clerk Arthur Tobin, Clerk Daryl Manchester, Clerk Robin Vaughn, George Brewster, Stephen Nickerson, Sgt. Cruz, Trooper Richard Solimini, State Police Lieutenant Gerard Mattaliano, State Police Lieutenant Michael Richards, Trooper John McCarthy, Terrance McCarthy, Trooper Andrew Da Silva, Trooper Andrew Mason, Leo Murray, Assistant District Attorney Kevin Mullen, Police Chief Silva and Officer Kathryn McCarron are hereby DISMISSED.

    **2.**    All official-capacity monetary damages claims against the remaining defendants are hereby DISMISSED under Eleventh Amendment Sovereign Immunity.

    **3.**    The only remaining federal claims are personal capacity claims for violations of 42 U.S.C. § 1983. The Clerk shall issue summonses to Trooper Mark Cohen, Trooper John Fanning, Trooper Vincent Noe, Trooper Bruce Tobin, Trooper Brian Tully, Trooper Scott Kearns, Trooper Brian Brooks, and First Assistant Clerk Magistrate James Flanagan. The Clerk shall send the summonses, a copy of the Amended Complaint, and this Order to Clapp, who must thereafter serve the defendants in accordance with Federal Rule of Civil Procedure 4(m). Clapp may elect to have service made by the United States Marshals Service. If directed by Clapp to do so, the United States Marshals Service shall serve the summonses, complaint, and this Order upon the above referenced defendants, in the manner directed by Clapp, with all costs of service to be advanced by the United States. Notwithstanding this Order to the United States Marshal Service, it remains Clapp's responsibility to provide the United States Marshal Service with all

necessary paperwork and service information. Notwithstanding Federal Rule of Civil Procedure 4(m) and Local Rule 4.1, Clapp shall have 90 days from the date of this Order to complete service.

**SO ORDERED.**

March 14, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE