UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KEVIN S. CLAPP,<br><br>Plaintiff,<br><br>v.<br><br>MARK COHEN, JOHN FANNING, VINCENT NOE, BRUCE TOBIN, BRIAN TULLY, SCOTT KEARNS, BRIAN BROOKS, and JAMES FLANAGAN,<br><br>Defendants. | Civil Action No. 18-cv-10426-ADB |

**MEMORANDUM AND ORDER ON
DEFENDANT JAMES FLANAGAN'S MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Kevin Clapp ("Clapp") alleges that numerous state and local actors conspired to violate his constitutional rights in connection with his 2016 arrest for threatening to kill a state trooper. Presently before the Court is Defendant James Flanagan's ("Flanagan") motion to dismiss the complaint. [ECF No. 60]. Clapp claims that Flanagan conspired to commit perjury so that Clapp would be accused of crimes he never committed. [ECF No. 21 ¶ 21 ("Am. Compl")].

Because Flanagan, a clerk magistrate, was performing an adjudicatory function when he issued Clapp's arrest warrant and is therefore entitled to quasi-judicial or qualified immunity, the motion to dismiss [ECF No. 60] is GRANTED. Alternatively, the motion would be granted in any case because Clapp has failed to allege that Flanagan violated his constitutional rights.

**I.     BACKGROUND**

For purposes of this motion the facts are drawn from the Amended Complaint [Am. Compl.] and the warrant application and affidavit referenced therein [ECF No. 61-1], and are viewed in the light most favorable to Clapp.[1]  "In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a *pro se* complaint must be evaluated upon less stringent standards than those applicable to one drafted by an attorney." Ulatowski v. Ponte, 524 F. Supp. 1112, 1114 (D. Mass. 1981); see also Elliott v. Segal, No. 19-cv-10259-ADB, 2019 WL 5168448, at * 4 n.2 (D. Mass. Oct. 15, 2019) ("Because [Plaintiff] is *pro se* [the Court] read[s] [her] complaint with an extra degree of solicitude." (quoting Malek v. Knightly, No. 94-cv-02113, 1995 WL 338178 (1st Cir. June 5, 1995))) (alterations in original).  Still, the Court will "not conjure up unpleaded facts to support . . . conclusory [allegations]." Cote v. Murphy, No. 04-2538, 152 F. App'x 6, 7 (1st Cir. Oct. 21, 2005) (quoting Hurney v. Carver, 602 F.2d 993, 995 (1st Cir. 1979)) (alterations in original).

Clapp alleges that his mother was beaten to death by a nurse's aide at her nursing home and passed away on November 21, 2013.  [Am. Compl. ¶¶ 1, 24–25].  Clapp believes that Officer Kathryn McCarron and Chief Silva of the Westwood Police Department failed to bring charges against his mother's alleged attacker.  [Id.].  He claims that Officer McCarron was told by an unidentified person not to prosecute the case and that Chief Silva "did not like [Clapp]." [Id.].  He further alleges that numerous state and local government actors conspired to retaliate against him for challenging the investigation of his mother's death.  [Id. ¶¶ 1–37].

---

[1] The Court may properly consider the warrant application and affidavit on a motion to dismiss because the documents are incorporated by reference in the Amended Complaint. Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2007).

On March 8, 2016, Flanagan, the First Assistant Clerk Magistrate of the Stoughton District Court, signed an arrest warrant for Clapp for threatening to kill State Trooper John Fanning and his wife. [Id. ¶¶ 21, 27–28]. According to the affidavit supporting the warrant, Clapp believed that Fanning had purposefully covered up the Police Department's investigation of Clapp's mother's death. [ECF No. 61-1 at 3–8]. Clapp allegedly sent aggressive text messages and made calls in which he threatened to kill Fanning and his wife, referencing that he knew where Fanning lived. [Id.]. Clapp asserts that the warrant lacked "evidence or merit" and that Flanagan committed perjury and conspired with state and local officials to falsely accuse him. [Id. ¶¶ 1–4, 21]. Clapp was arrested on the warrant and held in custody for one night. [Id. ¶ 6]. He was subsequently released on conditions including cash bail and GPS monitoring. [Id. ¶¶ 10, 12]. On March 9, 2018, following a trial, Clapp was acquitted by a jury on all charges. [Id. ¶¶ 1, 13].

## II.     PROCEDURAL HISTORY

On March 5, 2018, Clapp filed a complaint against Flanagan and 78 other defendants. [ECF No. 1]. He was subsequently ordered to file an amended complaint that complied with the Federal Rules of Civil Procedure. [ECF No. 7]. Clapp filed the Amended Complaint, which named Flanagan and 40 other defendants. [ECF No. 21]. On March 14, 2019, the Court dismissed (1) all claims under Title III of the Americans with Disabilities Act, (2) all claims against all but eight defendants, and (3) all official-capacity monetary damages claims against the remaining defendants. [ECF No. 24]. The surviving claims are personal capacity claims under 42 U.S.C. § 1983 against eight officials, including Flanagan, for violating Clapp's constitutional rights. [Am. Compl.]

**III.     STANDARD OF REVIEW**

To evaluate a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. P.R., 655 F.3d 61, 72 (1st Cir. 2011)). The complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," id. (quoting Fed. R. Civ. P. 8(a)(2)), and should "contain 'enough facts to state a claim to relief that is plausible on its face,'" id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

"The plausibility standard invites a two-step pavane." Maddox, 732 F.3d at 80. First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

4

**IV.     DISCUSSION**

The Fourth Amendment provides, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Clapp's claims against Flanagan are best understood as allegations that Flanagan violated his Fourth Amendment rights by issuing an arrest warrant for Clapp without probable cause.  See [Am. Compl. ¶ 21].

**A.     Flanagan Was Protected by Quasi-Judicial Immunity**

Because Flanagan, the First Assistant Clerk Magistrate of the Stoughton District Court, was performing an adjudicatory function when he issued the arrest warrant, he is protected from liability by quasi-judicial immunity.  "[I]t is an axiom of black letter law that when a judge carries out traditional adjudicatory functions, he or she has absolute immunity for those actions." Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019).  "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial discretion . . . ." Pierson v. Ray, 386 U.S. 547, 553–54 (1967). "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'" Id. at 554 (quoting Bradley v. Fisher, 80 U.S. 335, 349 n.16 (1871)).

In determining whether a judge is entitled to judicial immunity, the Supreme Court has directed courts to consider whether the action at issue is one that would normally be performed by a judge and whether the parties were dealing with the judge in his or her official capacity.

Stump v. Sparkman, 435 U.S. 349, 362 (1978).  "The underlying rationale for providing absolute immunity to a government official is that full exemption from liability is required in order for an individual to effectively partake in an adjudicative role."  Ass'n of Victims of Med. Malpractice v. Torres-Nieves, No. 12-cv-1812, 2016 WL 8710978, at *3 (D.P.R. Aug. 26, 2016) (citing Coggeshall v. Mass. Bd. of Registration of Psychologists, 603 F.3d 658, 662 (1st Cir. 2010)).  "Judicial immunity is appropriate unless a judge is carrying out an activity that is not adjudicatory."  Zenon, 924 F.3d at 617.  Administrative decisions, though necessary to the function of a judge, are not adjudicatory and are therefore not protected by judicial immunity.  Forrester v. White, 484 U.S. 219, 227–28 (1988).

Individuals other than judges who perform adjudicatory functions, such as a clerk magistrate, may be protected by quasi-judicial immunity.  The doctrine of quasi-judicial immunity provides absolute immunity for those who perform tasks that are "inextricably intertwined" with the judicial function.  Nystedt v. Nigro, 700 F.3d 25, 30 (1st Cir. 2012).  Therefore, a clerk may be protected by quasi-judicial immunity for acts that are part of an adjudicatory function, that is intertwined with a judicial function.  Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980).

To determine whether a defendant has engaged in official functions that are "inextricably intertwined" with the judicial function, and therefore considered quasi-judicial, courts consider: (1) whether the official is engaged in an "adjudicatory" function, "in that he decides facts, applies laws, and otherwise resolves disputes on the merits"; (2) whether the official decides cases that are sufficiently controversial such that, like a judge, he would be subject to damages actions; and (3) whether the official adjudicates cases with safeguards designed to protect the

parties rights. Diva's Inc. v. City of Bangor, 411 F.3d 30, 41 (1st Cir. 2005) (quoting Bettencourt v. Bd. of Registration, 904 F.2d 772, 783 (1st Cir. 1990)).

Here, Flanagan's issuance of the criminal complaint and warrant for Clapp's arrest is entitled to quasi-judicial immunity because, in issuing a complaint and warrant, he was performing a judicial function. As a clerk, Flanagan was given discretion to issue warrants and summonses under Massachusetts law. See Mass. Gen. Laws ch. 218 §§ 33, 35. Such functions are sufficient to entitle an official to quasi-judicial immunity. See Roberts v. Town of Scituate, No. 11-cv-11546, 2012 WL 2914444, at *4 (D. Mass. July 16, 2012) (finding that clerk magistrate was entitled to quasi-judicial immunity because he was authorized under Massachusetts law to adjudicate the application for a criminal complaint); see also Merrifield v. Demello, No. 96-2209, 1997 WL 351661, at *1 (1st Cir. June 18, 1997) (per curium) (dismissing a claim against Clerk Magistrate with prejudice because Clerk was entitled to absolute immunity for decision to issue arrest warrant); Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 228 (1st Cir. 1990) (contrasting defendant in that case with a "clerk performing a judicial function by issuing a warrant" who would be protected by quasi-judicial immunity). Allegations of malice or corruption are insufficient to abrogate Flanagan's immunity. Lane v. Brady, No. 86-cv-1309, 1986 WL 14094, at *2 (D. Mass. Dec. 4, 1986).

### B.   Flanagan Is Entitled to Qualified Immunity

If Flanagan were not protected by quasi-judicial immunity, he would still be protected from liability under § 1983 by qualified immunity because Clapp fails to allege that Flanagan violated a clearly-established constitutional right. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

7

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In determining whether a government official is entitled to qualified immunity, courts must consider (1) whether the facts alleged by plaintiff constitute a violation of plaintiff's constitutional rights and (2) whether that constitutional right was clearly established at the time of the alleged violation. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). The facts of the particular case must be such that a reasonable defendant would understand that his conduct violated that constitutional right. Id. Courts are permitted to address the two questions in any order. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Clapp's claims are insufficient to constitute an alleged constitutional violation. Clapp asserts that Flanagan engaged in perjury as part of a conspiracy to arrest Clapp under false pretenses. [Am. Compl. ¶ 21]. He admits that Flanagan relied on an affidavit that was "signed under the penalties of perjury that [the] attached affidavit was true." [Id.]. The sworn affidavit described a long history of text messages that the affiant state trooper said led him to believe that Clapp had "engaged in stalking" and made threats against the state trooper and his family. [ECF No. 61-1 at 3–7]. Given the substance of the affidavit and the fact that it was signed under the pain and penalty of perjury, Clapp's argument that it was unreasonable for Flanagan to rely on the affidavit in issuing the warrant, [ECF No. 21 ¶ 21], lacks merit.

Because the affidavit supported a finding of probable cause for the stalking and threats charges, Clapp's only remaining claim would be that Flanagan violated his Fourth Amendment rights by knowingly relying on false information in the affidavit. Even assuming *arguendo* that the affidavit included false information, Clapp has not alleged any facts that would suggest that Flanagan issued the arrest warrant knowing that the accusations in the affidavit were false or that

Flanagan should have known that the accusations were false.  See, e.g., Malley v. Briggs, 475 U.S. 335, 344–45 (1986) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." (citation omitted)); Washington v. Rivera, 939 F.3d 1239, 1248 (11th Cir. 2019) (holding that probation officer did not violate Fourth Amendment when she prepared an arrest warrant for plaintiff's alleged failure to pay a fine, which he had already paid, because the clerk made a reasonable mistake in relying on clerk's office's statement that the fine had not been paid); Berg v. Cty. of Allegheny, 219 F.3d 261, 274 (3d Cir. 2000) (holding that warrant clerk could only be held liable for a Fourth Amendment violation if she intentionally caused plaintiff to be arrested or was deliberately indifferent to plaintiff's rights).  Rather, Clapp's complaint rests on broad accusations that lack the specificity necessary for the claims to proceed.  See, e.g., [ECF No. 21 ¶ 21 ("Mr. Flanagan conspired to commit perjury so I would be falsely accused of all crimes that I never did.")].  Such claims are insufficient to establish that Flanagan violated Clapp's constitutional rights.

### C. In the Alternative, Clapp Has Failed to Plausibly Allege that Flanagan Violated His Constitutional Rights

Finally, even if Flanagan were not protected by quasi-judicial immunity or qualified immunity, Clapp has failed to state a claim under § 1983.  "Section 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State."  Klunder v. Brown Univ., 778 F.3d 24, 30 (1st Cir. 2015) (internal quotation marks and citations omitted).  "To make out a viable section 1983 claim, a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued."  Id. (quoting Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011)).

For the same reasons that the Court finds that Flanagan is entitled to qualified immunity, the Court finds that Clapp has failed to plausibly allege a constitutional violation. As discussed supra at Section IV.B, Clapp has neither pled facts sufficient to suggest that Flanagan issued the arrest warrant knowing that the accusations in the affidavit were false, nor adequately alleged that Flanagan otherwise violated his constitutional rights. The affidavit, which described a long history of hostile and belligerent text messages that referenced knowing where Fanning lived, supported a finding of probable cause for the stalking and threats charges. [ECF No. 61-1 at 3–8]. The broad accusation that Flanagan "conspired to commit perjury" is insufficient to allege that he knew or should have known that the accusations within the affidavit were false. See [ECF No. 21 ¶ 21]. The Amended Complaint therefore fails to state a claim.

## V.     CONCLUSION

Accordingly, Flanagan's motion to dismiss [ECF No. 60] is GRANTED. Flanagan was engaged in an adjudicatory activity when he issued Clapp's arrest warrant and is therefore entitled to quasi-judicial immunity. In the alternative, because Clapp has failed to allege that Flanagan violated a clearly established constitutional right, Flanagan is entitled to qualified immunity and Clapp has failed to state a cognizable claim.

**SO ORDERED.**

November 8, 2019                                                              /s/ Allison D. Burroughs
                                                                              ALLISON D. BURROUGHS
                                                                              U.S. DISTRICT JUDGE