UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN CLAPP,<br>    Plaintiff<br><br>v.<br><br>CHARLES BAKER, et. al.<br>    Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 18-10426-ADB

**DEFENDANTS' JOINT LOCAL RULE 56.1
CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1, for purposes of summary judgment, Defendants submit the following joint statement of undisputed material facts as to which there is no genuine issue to be tried:

**The Parties and Their Backgrounds:**

    **A.   The Plaintiff**

1. The Plaintiff is Kevin Clapp, of Brockton, Massachusetts. **Exhibit A, Amended Complaint, at ¶ 3 under Jurisdiction, ECF No. 21.**

2. Mr. Clapp was arrested by members of the Massachusetts State Police on March 8, 2016, during the execution of an arrest warrant outside of his Brockton home. **Exhibit B, Memorandum and Order of March 14, 2019 at p. 9, ECF No. 24.**

**B. The Defendants:**

3. The Defendant, Mark Cohen, retired from the Massachusetts State Police in 2019 as a lieutenant. At the time of the incident, Cohen was a sergeant assigned to the Middleboro barracks. **Exhibit C, Affidavit of Mark Cohen.**

4. The Defendant, John Fanning, is a trooper with the Massachusetts State Police. The arrest warrant that was issued resulting in the Plaintiff's arrest on March 6, 2016 was issued as a result of threats made by Clapp against Tpr. Fanning and his wife, Jane Fanning. **Exhibit D, Affidavit of John Fanning**.

5. The Defendant, Bruce Tobin, is currently a sergeant with the Massachusetts State Police. At the time of the conduct that Mr. Clapp complains of, Sgt. Tobin was a trooper assigned to the Norfolk District Attorney's Detective Unit.

6. The Defendant, Brian Tully, is currently a Lieutenant employed by the Massachusetts State Police. At the time of the conduct that Mr. Clapp complains of, Sgt..Tully was a trooper assigned to the Norfolk District Attorney's Detective Unit. **Exhibit E, Affidavit of Brian Tully, ¶2-4.**

7. The Defendant, Scott Kearns, is a sergeant employed by the Massachusetts State Police. At the time of the conduct that Mr. Clapp complains of, Sgt. Kearns was a trooper assigned to the Norfolk District Attorney's Detective Unit **Exhibit F, Affidavit of Scott Kearns.**

8. The Defendant, Brian Brooks, is a lieutenant employed by the Massachusetts State Police. At the time of the conduct that Mr. Clapp complains of, Lt. Brooks was a

Sergeant assigned to the Norfolk District Attorney's Detective Unit. **Exhibit G, Affidavit of Brian Brooks at ¶ 1-3.**

### C. Other Persons of Note:

9. Leo Murray is a resident of Boston, Massachusetts. He has known Mr. Clapp for over thirty years. On March 7, 2016, Mr. Murray called 911 and reported to the State Police that Mr. Clapp had threatened to kill Tpr. Fanning and his wife, Jane Fanning. Mr. Murray gave a recorded statement later that day to members of the Massachusetts State Police. **Exhibit H, Affidavit of Leo Murray.**

10. Andrew DaSilva is a trooper employed by the Massachusetts State Police. During the relevant time period, Tpr. DaSilva was assigned to the DHQ-CAT ("Community Action Teams") out of the city of Brockton. In response to a call for assistance, Tpr. DaSilva responded to the Plaintiff's home on March 8, 2016 and transported him to the Middleboro barracks. As members of the DHQ-CAT Tpr. DaSilva and Tpr. Mason were assigned to a two-person state police vehicle.

11. Andrew Mason is a trooper employed by the Massachusetts State Police. During the relevant time period, Tpr. Mason was assigned to the DHQ-CAT ("Community Action Team") out of the city of Brockton. In response to a call for assistance, Tpr. Mason responded to the Plaintiff's home on March 8, 2016 and transported him to the Middleboro barracks. As members of the DHQ-CAT Tpr. Mason and Tpr. DaSilva were assigned to a two person state police vehicle.

**The Investigation, Arrest, and Prosecution of Kevin Clapp for the Crimes of Threats, Stalking and Resisting Arrest:**

12. At approximately 9:00 PM on March 6, 2016 Leo Murray spoke to Plaintiff Kevin Clapp by telephone. The two had known each other for approximately 30 years. Clapp had expressed to Murray his animosity towards Tpr. John Fanning on many occasions., Clapp told Murray that he blamed Fanning for stopping an investigation into the death of Clapp's mother and stated to Murray that he wanted to get Fanning fired. **Exhibit H, Murray Affidavit ¶2, 6-9**. Clapp's mother, Lois Clapp, died on November 21, 2013. **Exhibit B at p. 3.**

13. Clapp admits that he had telephone conversations with and sent texts to Murray that night, and that at the time he blamed Fanning for interfering with an investigation into his mother's death **Exhibit I, Deposition of Clapp I, pg. 153-154**.

14. Murray described Clapp as being in a rage during their conversation According to Murray "Clapp threatened John Fanning by stating 'I want to kill that little bastard…I'll kill him right here.'" Murray described Clapp's demeanor as "vicious". **Exhibit H, Murray Affidavit, par 10-11.**

15. Murray also said that Clapp threatened Fanning's wife, saying he hated her and "I should kill his wife". **Exhibit H, Murray Affidavit, par. 12.**

16. Murray was aware that Clapp had previously claimed he could commit any crime he wanted and get away with it because of his mental health issues. **Exhibit H, Murray Affidavit, par. 13.**

17. Murray reported Clapp's threats to the State Police, which initiated an investigation. On March 7, 2016, Murray gave a recorded interview to State Troopers Brian Brooks and Scott Kearns. Murray states that the transcript of that interview, a copy of which is attached to his affidavit, is true and accurate. **Exhibit H, Murray Affidavit, par. 15-17.**

18. In that interview Murray disclosed to the investigating Troopers Clapp's hatred of Fanning, that Clapp blamed Fanning for interfering into an investigation of the death of Clapp's mother and that Clapp was furious that Fanning never came to his aid. **Attachment to Exhibit H, transcript of Murray interview, pg. 3-5; Exhibit J, Affidavit in Support of Application for Arrest Warrant, par. 8-9.**

19. Murray told the Troopers that Clapp stated, referring to Fanning, "I wanna kill that bastard…I hate his wife. I could kill her." …I'll kill him right here." Murray described Clapp as scary and said he has a lot of anger. He recounted Clapp's claim that he could commit any crime he wanted to and they would not lock him up. **Exhibit H, Attachment 1, Murray interview, pg. 3-5.**

20. Clapp admits that Murray made a report that he had threatened to kill John Fanning and his wife. **Exhibit I, Deposition, Vol. II, pg. 255.**

21. On March 8, 2016 Tpr. Fanning told Tpr. Bruce Tobin that he had received multiple texts late in the evening of March 5, 2016 from a telephone number used by Clapp. Fanning forwarded those texts to Tobin. **Exhibit J, ¶3**. Copies of those texts are included in the Affidavit in support of the application for a criminal complaint, **Exhibit J.**

22. Clapp admits that he sent the texts that are contained in the Warrant Affidavit. **Exhibit I, Clapp Deposition, Vol I, pg. 150-153.**

23. At the time Tobin was assigned to the Detective Unit at the Norfolk District Attorney's Office. Tobin had 21 years of experience including numerous criminal investigations. Those investigations also included a number of investigations into the crimes of stalking and threats. **Exhibit J, Warrant Affidavit ¶1.**

24. Fanning told Tobin about Murray's reports of Clapp's threats. Fanning also said that Clapp knew where his family lived and that he was in fear for their safety. **Exhibit J, ¶8**.

25. On March 7, 2016 State Police Sgt. Brian Brooks and Tpr. Scott Kearns attempted to interview Clapp at his residence. Although Clapp's car was in the driveway and the lights were on, he refused to answer the door. Kearns then was able to speak with Clapp by phone, but Clapp was argumentative, told them to get away from his house and refused to meet. **Exhibit J, par. 10;** Clapp admits that two troopers came to his house to speak with him. **Exhibit I, Clapp Deposition Vol II, pg. 256. Exhibit G, Brooks Affidavit, par. 10-13.**

26. Tobin put the above facts into the Warrant Affidavit and submitted it to the Clerk-Magistrate at the Stoughton District Court with an Application for a Criminal Complaint for the arrest of Clapp. The Application sought an arrest warrant for threats to commit a crime against both John Fanning and Jane Fanning, in violation of M.G.L. c. 275, section 2, and for stalking in violation of M.G.L. c. 265, section 43A. The Magistrate found probable cause to arrest and issued the arrest warrant on

all three charges on March 8, 2016. A copy of the Application for a Criminal Complaint with the Magistrate's issuance is attached hereto as **Exhibit K**.

27. Clapp admits that an arrest warrant was issued. **Exhibit I, Clapp Deposition Vol. II, pg. 256-257.**

28. On the evening of March 8, 2016, State Police Officers Tully, Brooks and Kearns went to Clapp's home in Brockton to effectuate Clapp's arrest pursuant to the warrant. **Exhibit E, Tully Affidavit, ¶5-6.**

29. Clapp arrived in his car, driving into his driveway and parking in front of his garage. **Exhibit E, Tully Affidavit, ¶5-7.**

30. Tully approached Clapp first. Clapp was still in his car. Tully told Clapp that he had a warrant for his arrest and that he was under arrest. **Exhibit E, Tully Affidavit, ¶ 7-12. Exhibit L, Transcript of trial on resisting arrest charges, pg. 70-72.**

31. Clapp admits that the officers said they had a warrant for his arrest, that he asked to see the warrant and that they addressed him by name. **Exhibit I, Clapp Deposition Vol. I, pg. 96; Clapp Deposition Vol. II, pg. 295.**

32. Clapp admits that one of the Troopers told him to get out of his car, although he does not know which one. In response, Clapp tried to put his key back in the ignition, start the car and drive away. **Exhibit I, Clapp Deposition, Vol. I, pg. 83-84; Vol. II, pg. 295.**

33. Clapp was told not to start his car and to hand over his keys. He refused to hand over the keys. He tried to reach into a bag on the seat of his car. Clapp was told not to do that and complied. **Exhibit I, Clapp I, pg. 84.**

34. Clapp does not know which officer did what. He states that one went to the passenger door and tried to push him out while another officer tried to pull him out of the driver's door. **Exhibit I, Clapp I, pg. 86-88.**

35. Clapp testified that he was not going to get out voluntarily. He held on to the steering wheel trying not to be pulled out. According to Clapp it took 20 minutes to get him out of the car. Clapp admits that the officers were trying to remove him and he was not getting out. **Exhibit I, Clapp Deposition, Vol. I, pg. 89-90, 92; Exhibit L, Trial transcript, pg. 187.**

36. Clapp said he was "not getting out of the fucking car." He grabbed the wheel with both hands and refused to get out. **Exhibit L, Trial transcript, pg. 73-75.** As a result of his actions, Trooper Tully charged him with resisting arrest. **Exhibit E, ¶19.**

37. According to his doctor's records, Clapp was six foot three inches tall and weighed over 330 pounds. April 23, 2016 note of visit to American Chinese Medical Center, attached as **Exhibit Q, Medical Note**.

38. Clapp states that he asked to see the arrest warrant, saying it was his constitutional right to see it. **Exhibit I, Clapp Deposition, Vol. I, pg. 96-97; Exhibit L, Trial transcript, pg. 168.**

39. Although the Massachusetts State Police do not normally get the warrant and show it to the person being arrested, Tobin got the warrant from his cruiser and showed it to Clapp. Clapp called the warrant bullshit. **Exhibit L, Trial transcript, pg. 73-74.**

40. Clapp states that one of the troopers went to get the warrant and came back and slapped one page against his car window. He does not know which officer went to get the warrant. **Exhibit I, Clapp Deposition, Vol. I, pg. 97-100; Exhibit L, Trial transcript, pg. 168-169.**

41. Clapp states that he could recognize arrest warrants and harassment prevention orders, which he refers to as chapter 258E orders, because he had seen both before and had previously had harassment orders issued against him. **Exhibit I, Clapp Deposition, Vol. I, pg. 100-101; Clapp Deposition Vol. II, pg. 302-303.**

42. Clapp admits that he is aware that John Fanning was not part of the execution of his arrest on March 8, 2016. **Exhibit I, Clapp Deposition, Vol. II p.205.**

43. Clapp admits that John Fanning was not present at the time of his arrest on March 8, 2016; **Exhibit I, Clapp Deposition Vol. II, p. 205.**

44. Clapp admits that if somebody reported that another person threatened to kill someone, it would be taken seriously after an investigation**. Exhibit I, Clapp Deposition Vol. II, p. 251.**

**Facts Related To Foreclosure Of Home:**

45. Clapp owns a home at 79 Brookville Avenue, Brockton, Massachusetts. In 2006 he took out a first and second mortgage for the property. In March 2011 he obtained loan modifications which reduced his interest to 2% annually. However, the modification provided that interest rate would increase beginning in 2016 and more than double to 4.875% in 2018. The monthly payment for principal and interest on the first mortgage was reduced to $482.00 per month after the modification, but increased to $718.00 per month in 2018. The monthly payment on the second mortgage was reduced to $154.17 per month after the modification, but increased to $229.40 per month in 2018. **Exhibit M, Bankruptcy filings, pg. 30-39.**

46. According to a proof of claim filed by Santander Bank, Clapp did not make any mortgage payments on his first mortgage in January, February or March, 2016, and had a past due balance of $2,500.71 as of the date of March 1, 2016. **Exhibit M, pg. 19, 22.**

47. Clapp was unemployed from at least 2013 until he started a job in January, 2019. Plaintiff's Answer to Tobin Interrogatories Number 1, attached as **Exhibit O**. He lost that job in August 2019 and has not worked since. He did not file income tax returns for the years 2013 through 2018. **Exhibit P, Plaintiff's Opposition to Motion to Compel Discovery Responses, pg. 2.**

48. In 2016, Clapp's only income was a disability pension from the MBTA and Social Security disability. In 2015 he states he received $1,255.00 per month from Social Security. Plaintiff's Answer to Tobin Interrogatories Number 1, attached as **Exhibit**

  **O**. He received $418.00 a month, gross, from his MBTA disability as of October 2020.  **Exhibit J, Clapp Deposition Vol I, pg. 28.**

49. On March 2, 2018, Clapp filed a Chapter 13 proceeding in the United States Bankruptcy Court for the District of Massachusetts.  Bankruptcy Docket, attached hereto as **Exhibit M. pg. 1-18**

50. On October 24, 2018, Santander Bank filed a motion for relief from the automatic stay, supporting affidavit and certificate of non-compliance, citing the failure to comply with an order to make regular mortgage payments.  Through that motion, Santander asked to be allowed to foreclose on the mortgage.  **Exhibit M, pg. 50-60.**

51. On September 6, 2019, the Trustee filed a motion to dismiss for failure to make monthly payments.  On September 19, 2019 Clapp filed a motion to dismiss stating "Due to his declining health and loss of regular employment, Debtor no longer wishes to proceed with his Chapter 13."  The Court dismissed the petition.  **Exhibit M, pg. 61-62.**

52. On September 19, 2019, the Bankruptcy Petition was dismissed.  **Exhibit M, pg.1.**

53. Clapp's house has not been foreclosed. **Exhibit N, Affidavit of Counsel**

        Respectfully submitted,
        ALL DEFENDANTS,
        By one of their attorneys on behalf of all,

        ____/s/ Brian Rogal_____
        Brian Rogal, BBO #424920
        ROGAL & DONNELLAN, P.C.
        100 River Ridge Drive
        Norwood, MA 02062
        (781) 255-1200
        BRogal@RogalandDonnellan.com

## CERTIFICATE OF SERVICE

I hereby certify that that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Date: 11/22/2021                                      /s/    Brian Rogal
                                                                         Brian Rogal