UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN S. CLAPP,<br>    Plaintiff,<br><br>V.<br><br>MARK COHEN, JOHN FANNING,<br>BRUCE TOBIN, BRIAN TULLY,<br>SCOTT KEARNS, and BRIAN BROOKS,<br>    Defendants. | Civil Action No. 18-10426-ADB |

### DEFENDANT SCOTT KEARNS' MEMORANDUM IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT AND REQUEST FOR ORAL ARGUMENT

Now comes Scott Kearns, a Defendant in the above captioned matter, and moves this Honorable Court pursuant to Fed. R. Civ. P. 56 to enter judgment in his favor on the all claims remaining against Kearns for alleged violations of the rights of the Plaintiff, Kevin Clapp, as he seeks to enforce those rights through 42 U.S.C., § 1983, with the exception of the Plaintiff's claim of excessive force against Kearns during his arrest at the Plaintiff's home in Brockton, Massachusetts.

### I. Statement of the Case

Through this police misconduct action, Kevin S. Clapp, ("Plaintiff or "Mr. Clapp") alleges that his federal rights were violated when the Defendant law enforcement officers conspired to falsely accuse and falsely arrest him for the crimes of threats and stalking and resisting arrest **(Exhibit A)**. Specifically, the Plaintiff alleges that the moving Defendant, Scott Kearns ("Tpr. Kearns"), conspired with others to falsely accuse Mr. Clapp of threatening to kill John and Jane Fanning and also of stalking them. In addition, Clapp alleges that he was subjected to excessive force during an unlawful seizure in violation of Mr. Clapp's rights under

1

the Fourth Amendment. Finally, Mr. Clapp alleges that his arrest for resisting arrest was undertaken without probable cause and in violation of his Fourth Amendment rights.

At the time of Mr. Clapp's arrest, Tpr. Kearns was a long-serving member of the Massachusetts State Police assigned to the Norfolk County State Police Detective Unit **(MF ¶ 7)**. Prior to being assigned to investigate the allegations that Mr. Clapp threatened and stalked John and Jane Fanning, Tpr. Kearns did not know Mr. Clapp **(Exhibit F at ¶ 6)**.

On March 6, 2016 Mr. Clapp telephoned a long-time acquaintance, Leo Murray, and in referencing John Fanning, Clapp said "I want to kill that little bastard…I'll kill him right here" and Clapp further stated to Murray that he "should kill his wife" **(MF at ¶¶ 14–15)**. Clapp also stated to Murray that he could get away with killing John and Jane Fanning because of his various mental health conditions **(MF ¶ 16)**. Shortly after Murray received this phone call from Clapp, Murray dialed 911 and reported to the Massachusetts State Police what Mr. Clapp had just told him. In making his report, Murray identified himself, set forth the allegations against Clapp, and left contact information for the State Police to follow up with him **(MF ¶¶ 16–17)**. The next evening, Tpr. Kearns and Tpr. Bruce Tobin, both of the Norfolk County State Police Detective Unit, interviewed Mr. Murray in person. He repeated the allegations to them in a recorded interview **(MF ¶ 17; Exhibit H)**.

Tpr. Fanning was notified by Kearns and Tobin of the threats as made by Clapp. Fanning then reported receiving threatening text messages from a phone number associated with Mr. Clapp **(MF ¶ 21)**. Based on the reporting of Mr. Murray and Tpr. Fanning, Sgt. Tobin drafted an affidavit and submitted it to a neutral magistrate for his review. Based on the facts as contained in that affidavit, an arrest warrant was issued on March 8, 2016 for Mr. Clapp for the crimes of threats and stalking **(MF ¶ 26)**. The warrant was executed the same day when Defendants

Kearns, Tully, Brooks and Tobin arrested Mr. Clapp at his home **(MF ¶ 28)**. Clapp was transported by two State Police Troopers to the Middleboro barracks after his arrest **(MF ¶¶ 10, 11)**.

Clapp alleges the warrant issued without probable cause, that he was subjected to excessive force during and after the arrest, and that his supply of Percocet was stolen by Tpr. Kearns and Tpr. Tully, who, according to Clapp, for no apparent reason, returned to Clapp's home, broke in, stole his drugs, and then brought them to the barracks and turned them in as the personal property of Mr. Clapp, minus the pills that they stole **(Exhibit A)**.

Post-arrest, Clapp further alleges that he was subjected to excessive force by Lt. Cohen who is alleged to have stabbed him repeatedly with some type of a syringe while Clapp was being treated in the back of the ambulance that was used to transport Clapp to the hospital from the barracks **(Exhibit A)**.

## II. Standard of Review on Summary Judgment

A motion for summary judgment is a vessel launched "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial". Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), quoting, Garside v. Osco Drug, 895 F.2d 46, 50 (1st Cir. 1990), (quoting Fed. R. Civ. P. 56 advisory committee's note). Summary judgment should be granted if the movant shows, based on materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a). "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (quoting Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London,

637 F.3d 53, 56 (1st Cir. 2011)). "Otherwise stated, [the Court's] task is to determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999), quoting, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–2, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Because this case is before the court on Defendant Kearns's motion for summary judgment, all facts must be taken in the light most favorable to the Plaintiff, the non-moving party, Fed. R. Civ. P. 56(c); Mariasch v. Gillette Co., 521 F.3d 68, 71 (1st Cir. 2008). Even with that presumption, the Plaintiff cannot rely upon the allegations contained in his complaint to get beyond a motion for summary judgment. "This standard is favorable to the nonmoving party, but it does not give him a free pass to trial." Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013) quoting, Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). To prevent judgment entering in favor of Defendant Kearns, the Plaintiff must present evidence to counter that which Defendant Kearns presents through this motion – evidence that must go beyond a mere recycling of the allegations found in his complaint. Vargas v. Royal Bank of Canada, 604 F. Supp. 1036 (D.C. Puerto Rico 1985). In fact, the nonmoving party must "present affirmative evidence" in order to ward of summary judgment. Anderson., 477 U.S. at 256–57. "[T]he evidence offered by the adverse party cannot be 'merely colorable' or speculative." Coca-Cola Co., 522 F.3d at 175 (internal citations omitted).

When considering arguments for summary judgment, a court "must disregard improbable or overly attenuated inferences, unsupported conclusions, and rank speculation", Abbott v. Bragdon, 107 F.3d 934, 938 (1st Cir. 1997). Material included in or attached to a summary judgment motion must be admissible in order for it to create a dispute of a genuine material fact

4

sufficient to thwart summary judgment, Osco Drug, Inc., 895 F.2d. at 49–50 ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment"). To be genuine, a factual dispute must be built on a solid foundation — a foundation constructed from materials of evidentiary quality. Nieves-Romero, 715 F.3d at 378, quoting, Tropigas de Puerto Rico, Inc., 637 F.3d at 56; Osco Drug, Inc., 895 F.2d at 48. "[C]onclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative" will not suffice to ward off a properly supported summary judgment motion. Nieves-Romero, 715 F.3d at 378, quoting, Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001).

While it is not the role of the court to make credibility determinations or weigh the evidence presented, Anderson, 477 U.S. at 255, the uncontradicted testimony of Defendant Kearns and the co-Defendants is appropriately considered in assessing this motion for summary judgment. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 271–72 (3rd Cir. 2007) ("We cannot believe that the law precludes a party from presenting his own testimony on a summary judgment motion…The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness"). In short, "evidence from the moving party as to specific facts can be accepted by the court where no contrary evidence is tendered by the party opposing summary judgment, " Asociación De Periodistas De P.R. v. Mueller, 680 F.3d 70, 72 (1st Cir. 2012), quoting, Statchen v. Palmer, 623 F.3d 15, 18 (1st Cir. 2010) (Emphasis in the original).

### III.  STATEMENT OF THE FACTS

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 Defendant Kearns has filed a separate joint concise statement of undisputed material facts in support of his motion and memorandum of

law **(ECF No. 174)**. Defendant Kearns incorporates by reference the facts as set forth therein. Furthermore, Defendant Kearns adopts the facts as set forth in the accompanying joint concise statement of undisputed material facts for the purposes of this motion for summary judgment only and reserves the right to object to the stated facts and to offer evidence contrary to those facts should this matter proceed to trial. Fed. R. Civ. P. 56(c)(1)(A). To the extent any facts as submitted through the L.R. 56.1 statement of any other Defendant do not contradict the facts as submitted by Defendant Kearns, those facts are incorporated herein by reference. Throughout this memorandum of law Defendant Kearns will cite to the facts as **(MF ¶ )**.

### IV. LAW AND ARGUMENTS

Through his motion and this supporting memorandum, Defendant Kearns seeks to have judgment entered in his favor because "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Green Mountain Realty Corp., 750 F.3d at 38 (internal citations omitted). In addition, Kearns establishes through this memorandum that he is entitled to the defense of qualified immunity, Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 72 L.Ed.2d 396 (1982). The qualified immunity defense is a question for the court to decide. Lewis v. Kendrick, 944 F.2d 949, 953 (1st Cir. 1991) (quoting Maher v. Ochs, 817 F.2d 920, 924 (1st Cir. 1987)).

### a) The Defendants' Had Probable Cause to Seek an Arrest Warrant for Clapp Based on Clapp's Threats and Text Messages.

There was probable cause for the Defendants to seek an arrest warrant for the crimes of threats and stalking and there was probable cause to charge Mr. Clapp with resisting arrest **(MF ¶¶ 12–22; 29–32, 35–36)**. Probable cause is a "considerably less exacting" standard than that required to support a conviction at trial. Commonwealth v. O'Dell, 392 Mass. 445, 451 (1984). Probable cause requires "sufficient facts to warrant a person of reasonable caution in believing

6

that an offense has been committed;" it does not require proof beyond a reasonable doubt. Commonwealth v. Levesque, 436 Mass. 443, 447 (2002); citing to Carroll v. United States, 267 U.S. 132, 161 (1923); Gerstein v. Pugh, 420 U.S. 103, 111 (1975).

Only the probability of criminality, not a prima facie showing, is required for a probable cause finding. Illinois v. Gates, 462 U.S. 213, 235 (1983) (issuance of a warrant). Each and every fact as set forth in Tobin's affidavit and as reviewed by the magistrate supported the probable cause finding that Kevin Clapp committed the crimes of threats and stalking **(MF ¶¶ 12–27)**. It is well established in the First Circuit that probable cause can be established based on statements from a witness. "[W]hen information comes from a victim or a witness…there is a presumption that such information carries an indicia of reliability." Forest v. Pawtucket Police Dep't, 290 F.Supp. 2d 215, 227 (D. R.I. 2003) aff'd, 377 F.3d 52 (1stCir. 2004); Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 10 (1stCir. 2004). ("The uncorroborated testimony of a victim or other percipient witness is ordinarily sufficient on its own to support a finding of probable cause"). Here, the defendant Troopers did not stop at the information received from a witness by way of a 911 call. Rather, the Troopers followed up and conducted an in person interview with the witness prior to determining that he was credible. Ornelas v. United States, 517 U.S. 690, 700 (1996) (explaining that Supreme Court cases "have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists") (citation omitted) **(MF ¶¶ 17–18)**.

Based on Murray first reporting through 911 the threats as made by Clapp and then presenting himself for an in person interview, Defendant Tobin was on solid footing to conclude that there was sufficient evidence to present to a neutral magistrate for a determination of probable cause that Kevin Clapp committed the crimes of threats. Id. **(MF ¶ 26)**. In addition, the

text messages received by Tpr. Fanning from a number associated with Clapp gave Tobin a reasonable basis for concluding that probable cause existed to seek an arrest warrant for the crime of stalking **(MF ¶ 21)**. Any reasonable officer acting on the arrest warrant that was issued by Magistrate James Flannery was well within the bounds of constitutionally correct conduct. Torres Ramirez v. Bermudez Garcia, 898 F.2d 224 (1st Cir. 1989) citing to Hill v. Bogans, 735 F.2d 391 (10th Cir.1984) (officers not required to investigate facially valid warrant).

Here, the probable cause for the initial arrest of Mr. Clapp was established when Leo Murray conveyed to the State Police that Mr. Clapp called him and made incriminating statements **(MF ¶¶ 17–18)**. The incriminating statements that Clapp made during his call to Murray are admissible against Clapp as statements against interest. Fed. R. Evid. 801(d)(2) and 804(b)(3) **(MF ¶¶ 12–26)**. Tpr. Kearns, along with Tobin, interviewed Murray the day after Clapp made his incriminating statements. What the investigators learned from Murray was incorporated into an affidavit that Tobin then submitted in support of his request for an arrest warrant. The affidavit was reviewed by a neutral magistrate who ultimately concluded that there was probable cause **(MF ¶ 26)**. Because Mr. Clapp was arrested under the authority of a warrant that was issued based on probable cause by a neutral magistrate, Mr. Clapp cannot establish that his arrest pursuant to the warrant deprived him of his Fourth Amendment rights. Id.

      **b) Clapp's Conduct Established Probable Cause for the Crime of Threats.**

Under Massachusetts law, a threat to commit a crime is itself a crime. See M.G.L. c. 275, §§ 2-4. The elements of the crime of threat to commit a crime are as follows:

> First: That the defendant expressed an intent to injure a person, or property of another, now or in the future **(MF ¶¶ 12–15, 22)**;
>
> Second: That the defendant intended that his threat be conveyed to a particular person **(MF ¶ 22)**;

Third: That the injury that was threatened, if carried out, would constitute a crime **(MF ¶¶ 12–15, 22)**; and

Fourth: That the defendant made the threat under circumstances which could reasonably have caused the person to whom it was conveyed to fear that the defendant had both the intention and the ability to carry out the threat **(MF ¶¶ 12–15, 22)**;

CRIMINAL MODEL JURY INSTRUCTIONS FOR USE IN THE DISTRICT COURT, MASSACHUSETTS CONTINUING LEGAL EDUCATION (Revised, 2020). §6.700 THREAT TO COMMIT CRIME (January 2013).

Given the totality of the facts and circumstances known to the officers at the time the request for an arrest warrant was sought, there was probable cause to arrest the Plaintiff for threats under M.G.L. c. 275, §§ 2-4 **(MF ¶¶ 12–15, 22)**.

### c) **Clapp's Conduct Established Probable Cause for the Crime of Stalking.**

Under Massachusetts law, stalking is a crime. See M.G.L. c. 265, § 43. The crime of stalking is defined as follows:

> "Whoever . . . willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress, and makes a threat with the intent to place the person in imminent fear of death or bodily injury, shall be guilty of the crime of stalking . . . ." (pertinent part only).

M.G.L. c. 265, § 43 .

The elements of the crime of stalking are as follows:

First: That over a period of time the defendant knowingly engaged in a pattern of conduct or series of acts, involving at least three incidents, directed at the victim **(MF ¶¶ 12-26)**;

Second: That those acts were of a kind that would cause a reasonable person to suffer substantial emotional distress **(MF ¶¶ 14–16, 19, 21; Exhibit J)**;

Third: That those acts did cause the victim to become seriously alarmed or annoyed **(Exhibit J)**;

> Fourth: That the defendant took those actions willfully and maliciously **(MF ¶¶ 12–16, 27)**.
>
> And *Fifth:* That the defendant also made a threat with the intention of placing *[the Fannings]* in imminent fear of death or bodily injury **(MF ¶¶ 12–16, 27, Exhibit J)**.

CRIMINAL MODEL JURY INSTRUCTIONS FOR USE IN THE DISTRICT COURT, MASSACHUSETTS CONTINUING LEGAL EDUCATION (Revised, 2020) § 6.680 STALKING (May 2011).

Given the totality of the facts and circumstances known to the officers at the time the request for an arrest warrant was sought, there was probable cause to arrest the Plaintiff for stalking under M.G.L. c. 265, § 43.

### d) <u>Clapp's Conduct at the Scene of his Arrest Established Probable Cause for the Crime of Resisting Arrest.</u>

Under Massachusetts law, resisting arrest is a crime. See M.G.L. c. 268, § 32B. The crime of resisting arrest is defined as follows:

> Section 32B. (a) A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:
> (1) using or threatening to use physical force or violence against the police officer or another; or
> (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another.
> (b) It shall not be a defense to a prosecution under this section that the police officer was attempting to make an arrest which was unlawful, if he was acting under color of his official authority, and in attempting to make the arrest he was not resorting to unreasonable or excessive force giving rise to the right of self-defense. A police officer acts under the color of his official authority when, in the regular course of assigned duties, he is called upon to make, and does make, a judgment in good faith based upon surrounding facts and circumstances that an arrest should be made by him.
> (c) The term "police officer" as used in this section shall mean a police officer in uniform or, if out of uniform, one who has identified himself by exhibiting his credentials as such police officer while attempting such arrest.

The elements of the crime of resisting arrest are as follows:

>First: That the defendant prevented or attempted to prevent a police officer from making an arrest (of the defendant) (or) (of another person) **(MF ¶¶ 32, 35, 36)**;
>
>Second: That the officer was acting under color of authority at the time **(MF ¶¶ 31–31)**;
>
>Third: That the defendant resisted: either by using, or threatening to use, physical force or violence against the police officer (or another person) or by using some other means which created a substantial risk of causing bodily injury to the police officer (or another person) **(MF ¶¶ 32, 34–37)**; and
>
>Fourth: That the defendant did so knowingly; that is to say, that the defendant knew at the time that he (she) was acting to prevent an arrest by a police officer acting under color of his (her) official authority **(MF ¶¶ 38–39)**.

CRIMINAL MODEL JURY INSTRUCTIONS FOR USE IN THE DISTRICT COURT, MASSACHUSETTS CONTINUING LEGAL EDUCATION (Revised, 2020), at § 7.460 RESISTING ARREST (2009 Edition).

Probable cause is based on what the arresting officers knew at the time that they acted. Here, we have Clapp trying to evade summary judgment by claiming he had no idea that the men who announced to him they had a warrant for his arrest were police officers. Probable cause exists where "at the moment of the arrest, the facts and circumstances within the [officers'] knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996). In assessing whether probable cause existed at the time of the arrest, the Court must look to the "totality of the circumstances." United States v. Rivera, 825 F.3d 59, 63 (1st Cir. 2016).

The totality of the circumstances known by the arresting officer establish that the day before Mr. Clapp was arrested he was visited by two of the arresting officers who attempted to interview him **(SM ¶ 25)**. Upon answering the phone Clapp was informed that the caller was a member of the Massachusetts State Police **(Exhibit F at ¶ 9)**. Clapp acknowledges that the State Police showed up at his house the evening before he was arrested **(SM ¶ 25)**. During the call of

11

the previous evening, Clapp was angry and aggressive and he refused to cooperate, and ultimately refused to meet with the officers **(SM ¶ 25; Exhibit F at ¶ 9)**. Twenty-four hours prior to the arrest Clapp knew he was being investigated by the State Police. Their presence at his home the following day could not have been unexpected given that Clapp admitted he made the call to Murray wherein he threatened the life of a State Trooper and his wife and admitted to sending threatening texts to Trooper Fanning **(SM ¶¶ 20, 22; Exhibit F at ¶ 9)**. "While the court may not, as a rule, reject interested testimony that conflicts with the other parties' version of the facts, it may do so where the testimony is inherently implausible," Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 856 (1st Cir. 2008). Clapp's claim of being unaware that the four men who appeared at his home with an arrest warrant forty-eight hours after he threatened to kill a State Trooper and his wife, and twenty-four hours after he chased two State Troopers off of his property, is "inherently implausible." Id.

"[I]n the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach." Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004). Here, there is ample evidence that Clapp was resisting a lawful arrest. In counter to that, Mr. Clapp offers only an implausible claim that he had no idea the officers at his car door were in fact the police. Id.

Probable cause for the arrest on the warrant means probable cause for arrest for the purposes of Clapp's Fourth Amendment claim. As long as the warrant authorized Clapp's arrest, the fact that he was also charged with resisting arrest is of no consequence to his Fourth Amendment claim. For the purposes of an unlawful arrest claim under the Fourth Amendment, the only relevant inquiry is whether there was probable cause that any arrestable offense was committed. United States v. Jones, 432 F.3d 37, 41 (1stCir. 2005), citing Devenpeck v. Alford,

543 U.S. 146, 153 (2004). Since there was probable cause for the arrest of Clapp based on the warrant, no independent claim for false arrest lies for the arrest on resisting arrest. Id.

To the extent that Clapp seeks to pursue a claim of malicious prosecution on the resisting arrest claim, that fails as well because Clapp did resist arrest as both his conduct and admissions established **(MF ¶¶ 32–39)**. Because of the independent probable cause to arrest for the crime of resisting arrest, there is no malicious prosecution claim. In a malicious prosecution claim the Plaintiff has the burden to prove lack of probable cause. The mere fact that the Plaintiff was acquitted is insufficient to infer a lack of probable cause. Goddard v. Kelley, 629 F. Supp. 2d 115, 130 (D. Mass. 2009) citing to Muniz v. Mehlman, 327 Mass. 353, 359 (1951).

   e) **To the Extent Clapp's Claim is Based on Retaliatory Conduct, it Fails Due to the Existence of Probable Cause to Arrest Clapp.**

Among the forty-one parties named by Clapp as defendants through his Amended Complaint **(Exhibit A)** were Lt. Gerard Mattoliano and Lt. Michael Richards of the Internal Affairs Unit of the Massachusetts State Police. Clapp spoke with the Internal Affairs Unit on March 7, 2016, the day before his arrest **(Exhibit A)**. Although the claims against Mattoliano and Richards were dismissed by the Court, to the extent Clapp is claiming his arrest on March 8, 2016 was done in retaliation for his complaint to Internal Affairs regarding Tpr. Fanning, such claims are barred pursuant to Nieves v. Bartlett, 139 S.Ct. 1715 (2019) ("When asserting a claim for retaliatory arrest, a plaintiff must first establish the absence of probable cause, and then demonstrate that the retaliation was a substantial or motivating factor behind the arrest." Id at 1725 (internal citation omitted). "A particular officer's state of mind is simply "irrelevant," and it provides "no basis for invalidating an arrest." Id. at 1725 (internal citation omitted). Because probable cause for the arrest of Clapp is beyond dispute, any claim that the Troopers arrested

13

Clapp in retaliation for his complaint to Internal Affairs (or for any reason) is barred **(Exhibit K)**.

## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, Scott Kearns respectfully requests that his Motion for Partial Summary Judgment be granted, that judgment enter in his favor, and that he be awarded fees and costs as a prevailing party on the claims dismissed.

Scott Kearns requests oral argument on his motion.

Respectfully submitted,

The Defendant,
SCOTT KEARNS,
By his attorneys,

ROGAL & DONNELLAN, P.C.


/s/ Joseph G. Donnellan
Joseph G. Donnellan
BBO #558060
100 River Ridge Drive, Suite 203
Norwood, Massachusetts 02062
(781) 255-1200
(781) 255-7750
jdonnellan@rogalanddonnellan.com

**November 22, 2021**

## CERTIFICATE OF SERVICE

I, Joseph G. Donnellan, hereby certify that I served a copy of the foregoing DEFENDANT SCOTT KEARNS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT to all counsel of record, via ECF, and to those not so registered via 1st Class U.S. Mail, postage prepaid this 22nd day of November, 2021.

/s/ Joseph G. Donnellan
Joseph G. Donnellan