1

```
                                    Volume: II
                                    Pages: 1 - 198
                                    Exhibits: 33 - 36

            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS


                                    C.A. NO. 8-10426-ADB


  * * * * * * * * * * * * * * * * * *

  KEVIN CLAPP,
        Plaintiff

  VS.

  CHARLES BAKER, MARK COHEN, JOHN
  FANNING, VINCENT NOE, BRUCE
  TOBIN, BRIAN TULLY, SCOTT KEARNS,
  and BRIAN BROOKS,
        Defendants

  * * * * * * * * * * * * * * * * * *



        CONTINUED Deposition of KEVIN CLAPP, a witness

  called by counsel for the Defendant, Bruce Tobin,

  pursuant to the applicable rules, before Lorreen

  Hollingsworth, CSR/RPR, CSR NO. 114793, and Notary

  Public in and for the Commonwealth of Massachusetts,

  Rogal & Donnellan, P.C., 100 River Ridge Drive,

  Norwood, on Wednesday, September 15, 2021, at

  2:21 p.m.
```

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

```
 1    APPEARANCES:

 2    ROBERT JOHNSON, JR., ESQUIRE
        Johnson & Associates
 3      423B Washington Street, Suite 307
        Boston, Massachusetts 02131
 4      Rcjohnson11@comcast.net
        On behalf of the Plaintiff,
 5      Kevin Clapp

 6    DEBORAH A. BONDZIE, ESQUIRE (via Zoom)
        Law office of Deborah A. Bondzie
 7      47 Washington Street
        Quincy, Massachusetts 02269
 8      617-483-3501
        Dbondzie@bondzielaw.com
 9      On behalf of the Plaintiff,
        Kevin Clapp
10
      DAVID J. OFFICER, ESQUIRE
11      David J. Officer, P.C.
        17 Blackthorn Drive
12      Southborough, Massachusetts 01772
        888-945-2333
13      David@davidofficerlaw.com
        On behalf of the Defendant,
14      Mark Cohen

15    DANIEL J. MOYNIHAN, ESQUIRE (via Zoom)
        Law Office of Daniel J. Moynihan, P.C.
16      271 Main Street, Suite 302
        Stoneham, Massachusetts 02180
17      781-438-8800
        Moynihanlaw@verizon.net
18      On behalf of the Defendant,
        John Fanning
19
      MICHAEL J. AKERSON, ESQUIRE
20      Reardon, Joyce & Akerson, P.C.
        Four Lancaster Terrace
21      Worcester, Massachusetts 01609
        508-754-7285
22      Makerson@rja-law.com
        On behalf of the Defendant,
23      Vincent Noe

24
```

```
 1    APPEARANCES:

 2    BRIAN ROGAL, ESQUIRE (via Zoom)
         Rogal & Donnellan, P.C.
 3       100 River Ridge Drive
         Norwood, Massachusetts 02062
 4       781-255-1200
         Brogal@rogalanddonnellan.com
 5       On behalf of the Defendant,
         Bruce Tobin
 6
      ALANA BLATT CLEMENTS, ESQUIRE
 7    JOSEPH KITTREDGE, ESQUIRE (via Zoom)
         Rafanelli & Kittredge, P.C.
 8       One Keefe Road
         Acton, Massachusetts 01720
 9       978-369-6001
         Aclements@rkpclaw.com
10       Jkittredge@rkpclaw.com
         On behalf of the Defendants,
11       Brian Tully and Brian Brooks

12    JOSEPH P. DONNELLAN, ESQUIRE (via Zoom)
         Rogal & Donnellan, P.C.
13       100 River Ridge Drive
         Norwood, Massachusetts 02062
14       781-255-7700
         Jdonnellan@rogalanddonnellan.com
15       On behalf of the Defendant,
         Scott Kearns
16

17

18

19

20

21

22

23

24
```

```
 1                        I N D E X

 2

 3    Deposition of:           CROSS        REDIRECT

 4    KEVIN CLAPP

 5    (by Ms. Clements)          6

 6    (by Mr. Officer)          36

 7    (by Mr. Akerson)          90

 8    (by Mr. Moynihan)        144

 9    (by Mr. Rogal)                           158

10    (by Mr. Donnellan)       174

11    (by Mr. Johnson)         182

12

13                      E X H I B I T S

14

15    No.                                      For Ident.

16

17     33     The ambulance and hospital              71
              reports, Bates Tpr. Kearns 121 to
18            131

19     34     The document, Bates Tpr.                76
              Kearns 112 to 119
20
       35     The two pages of text exchanges         96
21
       36     The document entitled "Plaintiff's    113
22            Opposition to Defendant Tobin's
              Further Motion to Compel Responses
23            to Discovery and to Require
              Plaintiff to Provide Disclosures"
24



                    HOLLINGSWORTH & ASSOCIATES
                          (617) 281-6457
```

```
 1                        DAY II
 2                    S T I P U L A T I O N S
 3              It is hereby stipulated and agreed
 4      by and between counsel for the respective
 5      parties that the deposition will be read
 6      and signed by the witness, under the pains
 7      and penalties of perjury, and that the
 8      sealing, filing, and notarization of the
 9      deposition are waived.
10              It is further stipulated and agreed
11      that all objections, except as to form, and
12      motions to strike are reserved until the
13      time of trial.
14                        KEVIN CLAPP,
15      a witness called on behalf of the
16      Defendant, Bruce Tobin, having first been
17      duly sworn, deposes and says as follows:
18                  MS. CLEMENTS:  Mr. Clapp, my
19      name is Alana Black Clements.  I represent
20      Brian Tully and Brian Brooks.
21                  MR. JOHNSON:  Robert Johnson
22      for Kevin Clapp.  The deposition was
23      scheduled initially for 1:00; however, one
24      of the defense attorneys needed more time,
```

1       so we pushed it to 2 p.m.
2                    There was a mixup today about
3       whether there was an outstanding trespass
4       order against Mr. Clapp.  And so we had to
5       resolve that.
6                    And then I came in and
7       Mr. Clapp came in.  He was initially going
8       to do the depo, you know, through Zoom.
9       So, as a result of that mixup, we're
10      starting the deposition at 3:00.  Counsel
11      for the Defendants have assured me that
12      there is no outstanding trespass order.
13                   THE WITNESS:  No, they sent
14      it.  They resent it.  I have it.
15                   MR. OFFICER:  Is it rescinded
16      or waived for purposes of today?  I just
17      don't want Mr. Clapp to leave here under
18      the wrong impression.
19                   THE WITNESS:  "This will
20      confirm that" -- believe me, I can read.
21                   "This will confirm that the no
22      trespass order for this office for
23      Mr. Clapp is not in effect and will not be
24      enforced for the duration of today's

| | | |
|---|---|---|
| 1 | | left the scene, is that right? |
| 2 | A | No.  They -- they -- there was a lot of |
| 3 | | troopers outside the door. |
| 4 | Q | Okay. |
| 5 | A | They didn't leave that hospital for a long |
| 6 | | time. |
| 7 | Q | So then you're seen by an emergency |
| 8 | | physician, I assume, is that correct? |
| 9 | A | Yeah.  Seen by a nurse.  She drew blood. |
| 10 | Q | Okay.  When you were -- were you examined |
| 11 | | by the nurse? |
| 12 | A | Yeah. |
| 13 | Q | When you were examined by the nurse, were |
| 14 | | you wearing your street clothes, or had you |
| 15 | | turned into hospital -- a hospital gown, or |
| 16 | | something like that? |
| 17 | A | I can't remember. |
| 18 | Q | Do you recall changing into a hospital gown |
| 19 | | during that emergency room visit? |
| 20 | A | I can't remember. |
| 21 | Q | Were you examined by a physician? |
| 22 | A | I was examined by nurses, physician, yeah. |
| 23 | Q | So -- do you believe you were examined by |
| 24 | | both a nurse and then a physician? |

| | | |
|---|---|---|
| 1 | A | Right. And I -- as far as I know. I mean, |
| 2 | | a lot of people came in and asked me |
| 3 | | questions. They really didn't say who they |
| 4 | | were. |
| 5 | Q | Okay. |
| 6 | A | I remember the nurse drawing my blood very |
| 7 | | well, though. |
| 8 | Q | And did you tell the physician or the nurse |
| 9 | | that your arm had been pricked by someone |
| 10 | | while you were in the ambulance? |
| 11 | A | Oh, the nurse knew. She saw it. She was |
| 12 | | very good. |
| 13 | Q | The nurse saw that? |
| 14 | A | Yeah. The nurse that was drawing my |
| 15 | | blood -- I don't know if she was a |
| 16 | | phlebotomist or a nurse, but when she came |
| 17 | | in with the rubber band, she said, I'm |
| 18 | | going to tell you something, Mr. Clapp; |
| 19 | | those troopers are no good outside; they're |
| 20 | | out there to kill you. |
| 21 | | She said, I've had nothing but |
| 22 | | problems with them. She said, They're out |
| 23 | | to get you. |
| 24 | | I said, I know that. |

69

1  Q    When she said that, she said they were out
2       to get you --
3  A    Right.
4  Q    -- Mr. Clapp?
5  A    That's right.  Because she overheard them.
6       And she's had problems with them before,
7       she said.
8  Q    Do you know the name of that nurse?
9  A    No.  But I'd love to find out.  She'd make
10      a great witness.
11 Q    I think she would.
12                So the nurse knew or a medical
13      person --
14 A    Right.
15 Q    -- you said, saw that there had been
16      pricking in your arm?
17 A    Right.
18 Q    Because it was obvious?
19 A    Right.
20 Q    Did the physician say anything to you about
21      pricking in your arm?
22 A    No, because the nurse was in fear, because
23      the last time she said anything, the State
24      Police had tried to stop her for drunk

70

```
 1        driving.  They retaliate against people
 2        that many stick up for the patients.
 3              That's what she told me.
 4   Q    All right.  But a doctor came in, and he
 5        examined your arms, right?
 6   A    Mm-hmm.
 7   Q    Examined your shoulders?
 8   A    Yup.
 9   Q    Correct?
10              And he said nothing to you
11        about all these obvious pinpricks in your
12        arms, correct?  Is that what you're telling
13        us?
14   A    No.  He didn't spend very much time.
15   Q    But it was obvious?
16   A    Well, I wasn't impressed with him.
17   Q    But, I mean, the pinpricks were obvious in
18        your arm?
19   A    Well, I don't know how obvious they were.
20        To the phlebotomist or the nurse, they were
21        obvious.
22              You know, it's -- there's
23        little pricks in the arm -- I mean, if I
24        look at my arm now, you can say there's
```

1       little pricks in there.
2               I mean, I'm not -- I'm not a
3       nurse.
4  Q    Did you -- I'm sorry -- I didn't mean to
5       cut you off.
6  A    I'm not a nurse.  I don't know.
7  Q    Did you explain to the doctor that you'd
8       been pricked in the arm?
9  A    Well, he wrote a report.
10              He couldn't even spell right.
11 Q    That's not my question, sir.
12              Did you --
13 A    Oh, yeah --
14 Q    My question -- please, specifically -- did
15      you complain to him --
16 A    Yeah.
17 Q    -- that it had happened?
18 A    Yeah.
19              MR. OFFICER:  Could we mark
20      this as an exhibit.
21 A    Here's my arm here (indicating).
22              MR. JOHNSON:  There's no
23      question.
24              (Exhibit No. 33, The ambulance

```
1     they know that that puts me in a suicide
2     mode, which I feel like I'm going in right
3     now, which I have to take now -- I have to
4     take a couple pills, because I feel chest
5     pains.
6               MR. JOHNSON:  Do you want to
7     take a break?
8               THE WITNESS:  No, no.  I'm
9     okay.  I want to get it out here on the
10    table.
11              MR. AKERSON:  We're going to
12    take a break.
13              THE WITNESS:  Listen.  I don't
14    care whether you're --
15              MR. JOHNSON:  Let's take the
16    break, so you can take your --
17              THE WITNESS:  Oh, no, I don't
18    need any break.
19              MR. JOHNSON:  -- take your
20    pills.
21              THE WITNESS:  No, no, no.  I
22    don't need a break.  I don't need a break.
23    I'm fine.
24              I just want to get this out in
```

1    the open, that they pick on anybody in my
2    family.
3                MR. JOHNSON:  Mr. Clapp?
4                THE WITNESS:  How can a dead
5    man testify?
6                My father was dead, and he's
7    supposed to testify?
8                I've got my mother -- let's
9    bring it all out.  Come on.  Let's do it.
10  Q   So Donna O'Neil --
11               THE WITNESS:  No.  Wait a
12   minute.
13               Here's my mother; here's some
14   of her ashes (placing jar on table).  This
15   is Phyllis Clapp right here -- okay -- who
16   was killed.
17               Now, is she going to testify?
18               So let's bring it out,
19   Counselor.  Do you have a mother?  How do
20   you treat your mother?  Would you treat
21   your mother -- would you want your mother
22   in a jar like that (indicating)?
23               MR. JOHNSON:  Mr. Clapp, let's
24   take a break.

128

1   THE WITNESS:  We don't need a
2   break.
3   MR. JOHNSON:  All right.
4   Let's go.
5   THE WITNESS:  What they need
6   is a slap in their ass.
7   MR. JOHNSON:  No, no.
8   THE WITNESS:  You're
9   professional, and they're not.  And that's
10  what's wrong.
11  You think you're dealing with
12  professional lawyers, and you're not.
13  You're dealing with has-beens that are
14  protecting bums.
15  And they know I'm good,
16  because I don't lie.
17  MR. JOHNSON:  We need to
18  proceed.
19  THE WITNESS:  And I'll put a
20  picture of my mother up.  There she is
21  (indicating).
22  MR. JOHNSON:  Mr. Clapp, I
23  think we're not -- we need to slow down;
24  take a break.

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

129

1               THE WITNESS:  I don't need any
2      break.  I'm fine.
3               MR. JOHNSON:  All right.
4      Well, let's go.
5               THE WITNESS:  But I am sick
6      and tired of them bringing up my family
7      who's alive or dead, and they love to do
8      this bullshit.
9               MR. JOHNSON:  All right.
10     Okay.
11              THE WITNESS:  And the judge is
12     sick of it and has addressed them on it.
13              MR. JOHNSON:  All right.
14     So -- all right.  You've made that point.
15              THE WITNESS:  And they're
16     playing with the wrong judge.
17              MR. JOHNSON:  Can we go
18     forward?
19              THE WITNESS:  That's why she
20     never threw it out, but they're not that
21     smart to know that.
22              That's why they're going to do
23     a motion for summary judgement.
24              MR. JOHNSON:  Mr. Clapp --