UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KEVIN S. CLAPP, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 18-cv-10426-ADB |
| | * | |
| JOHN FANNING, BRUCE TOBIN, | * | |
| BRIAN TULLY, SCOTT KEARNS, and | * | |
| BRIAN BROOKS, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BURROUGHS, D.J.

Plaintiff Kevin S. Clapp ("Clapp" or "Plaintiff") brings this case pursuant to 42 U.S.C.

§ 1983, alleging that Defendants—Massachusetts State Police Officers John Fanning

("Fanning"), Bruce Tobin ("Tobin"), Brian Tully ("Tully"), Scott Kearns ("Kearns"), and Brian

Brooks ("Brooks) (collectively, "Defendants")—violated his civil rights by engaging in unlawful

conduct during his arrest and in the investigation leading up to his arrest.  Presently before the

Court are Kearns, Tully, Brooks, and Tobin's motions for partial summary judgment, [ECF Nos.

175, 177, 179, 184],[1] and Fanning's motion for summary judgment, [ECF No. 181].  For the

reasons set forth below, Defendants' motions for summary judgment are GRANTED.

---

[1] The Court notes that Tobin, Tully, Kearns, and Brooks have not moved for summary judgment
on the excessive force claims alleged in the amended complaint.

## I.    BACKGROUND

### A.    Defendants' Motions to Strike

Defendants have moved to strike significant portions of Clapp's statement of facts submitted in support of his opposition to summary judgment, [ECF No. 188-4], and the corresponding portions of Clapp's affidavit filed in support of those facts, [ECF No. 188-1 ("Clapp Affidavit")].[2]  See [ECF Nos. 196, 199, 201, 202, 208 (motions to strike)].  Clapp has not responded to these motions.  Because these motions affect the factual record to be considered when ruling on the summary judgment motions, the Court addresses them first.

The parties' statements of material facts are "useful devices for focusing a district court's attention on what is—and what is not—genuinely controverted."  Calvi v. Knox Cnty., 470 F.3d 422, 427 (1st Cir. 2006).  "But unless the statement is admitted, the court is required to evaluate the facts by reference to the record."  Inman v. Siciliano, No. 10-cv-10202, 2012 WL 1980408, at *14 (D. Mass. May 31, 2012).

Defendants have asked the Court to strike various paragraphs from Clapp's Concise Statement of Facts and accompanying affidavit as irrelevant, argumentative, conclusory, speculative, hearsay, or based on opinion.  Defendants also contend that several paragraphs in the two documents should be stricken pursuant Federal Rule of Civil Procedure 12(f) because they contain assertions that are "immaterial, impertinent, [and] scandalous" and have been introduced only to prejudice an opposing party.

---

[2] Plaintiff filed his Concise Statement of Material Facts Still in Dispute and Response to Defendants' Statement of Undisputed Facts and Affidavit five times, attached to each opposition motion, see [ECF Nos. 188-4, 189-1, 190-1, 191-1, 192-1 (responsive statement of facts) and ECF Nos. 188-1, 189-2, 190-2, 191-2, 192-2 (affidavit)].  These submissions are substantively identical and were filed simultaneously, so, in the interests of clarity and brevity, the Court will cite to only, [ECF No. 188-4 (responsive statement of facts)], and, [ECF No. 188-1 (Clapp Affidavit)].  Where the Court strikes a paragraph, it strikes it across all identical filings.

As a general matter, when ruling on a motion for summary judgment, the Court "safely may ignore 'conclusory allegations, improbable inferences, and unsupported speculation.'" Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  The Court agrees with Defendants that Plaintiff's responses include a substantial number of irrelevant facts and explanations, but the Court need not parse through each contested response.  In general, the Court will give little to no consideration to extraneous factual and legal assertions propounded by either party and notes that marginally relevant statements, by definition, do not create a genuine issue of material fact.  See McLaughlin v. McDonald's Corp., 203 F.R.D. 45, 50–51 (D. Mass. 2001).  To the extent Plaintiff's statements are speculative, conclusory, based on opinion, or argumentative, they have not been relied upon in deciding the pending motions.

Nonetheless, in the interest of establishing a clear record and preventing any prejudice to Defendants, the Court will strike certain portions of the materials as set forth below.

First, the Court will strike all paragraphs from Clapp's affidavit that reference his "belief" that Defendants Tully and Brooks entered his home and removed medication.  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated[,]"  Fed. R. Civ. P. 56(c)(4), and courts may strike portions of affidavits not based on personal knowledge of an event, see Facey v. Dickhaut, 91 F. Supp. 3d 12, 20 (D. Mass. 2014).  The statements concerning the theft of the medication are neither supported by Clapp's firsthand knowledge (Clapp admits he was in prison when he believed this occurred) or any other part of the record.  Further, they are of very limited relevance and whatever relevance Clapp attributes to these facts is far outweighed by the substantial prejudice

to the Defendants.  The Court therefore strikes the following paragraphs: [ECF No. 188-4 at 4–5 ¶¶ 24, 27; Clapp Affidavit ¶¶ 31, 35].

Second, Defendants have also argued that the Court should strike any references to Clapp's sexual assault allegations against Defendant Fanning because they are immaterial to this case.  See [ECF No. 204].  Even if these allegations could possibly raise a genuine dispute of law or fact in this matter, which is doubtful, the Court need not resolve this issue because the statements will be struck on other grounds.  "When an interested witness has given clear answers to unambiguous questions [at deposition], he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."  Flaherty v. Entergy Nuclear Operations, Inc., 946 F.3d 41, 50 (1st Cir. 2019) (quoting Pena v. Honeywell Int'l, Inc., 923 F.3d 18, 30 (1st Cir. 2019)) (alteration in original); see also T.K. through G.K. v. Town of Barnstable, No. 17-cv-11781, 2020 WL 3183164, at n.3 (D. Mass. June 15, 2020), appeal dismissed sub nom. G.K. v. Barnstable Pub. Sch., No. 20-1706, 2021 WL 161633 (1st Cir. Jan. 4, 2021).  At his deposition, Plaintiff testified that those allegations have "no relevancy" in this case and that they have "nothing . . . to do with this civil rights case."  See [ECF No. 204-1 at 243:16–244:9].  Despite this clear testimony, Plaintiff raised these allegations in his Concise Statement of Material Facts in Dispute and Response to Defendants' Statement of Undisputed Facts, and asserts that they are relevant because they offer a motive for the unlawful warrant obtained by Defendants and his subsequent unwarranted arrest.  Plaintiff has, however, failed to explain the change in his testimony from deposition to affidavit and neither Plaintiff nor his counsel tried to correct the deposition testimony before filing his affidavit in opposition to summary judgment.  Plaintiff cannot attempt to "survive summary judgment simply by contradicting" his previous sworn

deposition testimony "without explaining the contradiction or attempting to resolve the disparity." Pena, 923 F.3d at 30 (quoting Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999).  Accordingly, the Court strikes any such references from the record, including the following paragraphs: [ECF No. 188-4 at 2–3 ¶¶ 8, 14, 17; Clapp Affidavit ¶¶ 13, 21, 24].

For that same reason, the Court will also strike any paragraphs stating that Plaintiff did not know that Defendants were law enforcement when they approached his vehicle or that he was being arrested.  The following exchange is excerpted from Plaintiff's deposition:

> Q. When did you ask to see an arrest warrant?
> A.  I asked to see it when I was in the car.
> Q. Why did you ask to see an arrest warrant?
> A. Because they told me they had an arrest warrant.  I said, "Well, then let me see it."
>
> * * *
>
> A. . . . I said, "It's my constitutional right to see an arrest warrant for anything." I said, "I want to see it. I want to read it."

[ECF No. 174-10 at 96:14-20; 97:8-11 (Plaintiff's Deposition)].  Plaintiff goes on to testify that one of the Defendants brought a piece of paper to his window, but he did not believe it to be a valid arrest warrant.  [Id. at 97:13-23].  In his affidavit in opposition to summary judgment, however, Plaintiff denies that he knew Defendants were law enforcement or that he was being arrested; in fact, he claims he thought he was being carjacked.  [ECF No. 188-4 at 2–5 ¶¶ 9, 18– 19, 26; at 8 ¶ 32; Clapp Affidavit ¶¶ 14, 25, 26, 34].  It is not particularly relevant whether Clapp believed a valid arrest warrant was brought to his window, but his new affidavit statements contradict his previous testimony and he has not offered any explanation for this change.  Accordingly, the Court strikes the following paragraphs: [ECF No. 188-4 at 2–5 ¶¶ 9, 18–19, 26; at 8 ¶ 32; Clapp Affidavit ¶¶ 14, 25, 26, 34].

Finally, Defendant Tobin's motion to strike Exhibit 11 of Plaintiff's opposition as hearsay is <u>GRANTED</u>.  [ECF No. 208 at 6].  "It is black-letter law that hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted."  <u>Hannon v. Beard</u>, 645 F.3d 45, 49 (1st Cir. 2011) (quoting <u>Davila v. Corporacion de P.R. para la Difusion Publica</u>, 498 F.3d 9, 17(1st Cir. 2007)).  Exhibit 11 is an is an email from Plaintiff's bankruptcy attorney, John Ullian, to his current counsel discussing the history of Plaintiff's mortgage payments.  [ECF No. 188-3 at 17–18].  Plaintiff has not responded to Defendant Tobin's motion to strike, but based on his response to Defendants' Statement of Undisputed Facts, the Court can surmise that Clapp intends to use this email to demonstrate that he fell behind on his mortgage payments after his arrest on March 8, 2016.  Thus, the email, to the extent it would be offered for the truth of Clapp's mortgage payments, is hearsay and cannot be considered.  <u>See</u> <u>Clearview Software Int'l, Inc. v. Ware</u>, No. 07-cv-0405, 2011 WL 4007397, at *2 (D.N.H. Sept. 9, 2011) (declining to consider at summary judgment the emails of third parties who have not given sworn statements or been deposed).

Accordingly, Kearns' Motion to Strike, [ECF No. 196], Tully and Brooks' Motion to Strike, [ECF No. 199], Fanning's Motions to Strike, [ECF Nos. 201, 202], and Tobin's Motion to Strike, [ECF No. 208], are <u>GRANTED</u> in part with respect to the following paragraphs of Plaintiff's Concise Statement of Facts: [ECF No. 188-4 at 2–5 ¶¶ 8, 9, 14, 17–19, 24, 26–27; at 8 ¶ 32]; and Plaintiff's affidavit: [Clapp Affidavit ¶¶ 13–14, 21, 24–26, 31, 34–35].  Defendant Tobin's motion to strike Exhibit 11, [ECF No. 208 at 6], is also <u>GRANTED</u>.  All other objections are <u>DENIED</u> with leave to renew at a later time if necessary.

B.      **Factual Background**[3]

While the parties agree that certain basic events took place, they dispute many key facts and the inferences that should be drawn from the evidence before the Court.  Because Defendants have moved for summary judgment, the Court must review the evidence in the light most favorable to Plaintiff, who opposes summary judgment, and indulges all reasonable inferences in his favor.

1.      Leo Murray Interview

On March 7, 2016, Leo Murray gave a recorded interview to Defendants Brooks and Kearns concerning Clapp and Defendant Fanning.  [ECF No. 174 ¶ 17]; see also [ECF No. 174-9 ("Murray Affidavit")].  Murray and Fanning are cousins and Clapp has known them both for many years.  [ECF No. 174 ¶ 12; Clapp Affidavit ¶ 39; ECF No. 188-4 at 6 ¶ 9]; see also [Murray Affidavit ¶¶ 2–4.  In that interview, Murray reported that Clapp, while on the phone with Murray the previous day, had made threats against Fanning and his wife.  [ECF No. 174 ¶¶ 17–19]; see also [Murray Affidavit ¶¶ 14–15].  Murray stated that, during that call, Clapp told him that he blamed Fanning for interfering with an investigation into Clapp's mother's death on November 21, 2013.  [Id.]  According to Murray, Clapp's demeanor was "vicious," and he said, referring to Fanning, "'I want to kill that little bastard . . . I'll kill him right here,'" [ECF No. 174 ¶ 14; Murray Affidavit ¶ 11], and also that he "should kill" Fanning's wife as well, [ECF No. 174 ¶¶ 15, 19, 20; Murray Affidavit ¶ 12].  Murray also said that Clapp claimed he could commit any crime and get away with it because of his mental health issues, [ECF No. 174 ¶ 16; Murray Affidavit ¶ 13], and that Clapp had expressed animosity towards Fanning on many prior

---

[3] The facts are drawn from Defendants' Joint Local Rule 56.1 Concise Statement of Undisputed Material Facts, [ECF No. 174], Plaintiff's Concise Statement of Material Facts Still in Dispute and Response to Defendants' Statement of Undisputed Facts, [ECF No. 188-4], Defendants' Joint Response to Plaintiff's Statement of Facts, [ECF No. 207], and the documents cited therein.

occasions, [ECF No. 174 ¶¶ 12, 18; Murray Affidavit ¶¶ 6–7].  Based on this conversation, Murray contacted the State Police in the early hours of March 7, which initiated an investigation that included the Murray interview.  [ECF No. 174 ¶ 17; Murray Affidavit ¶¶ 14–15].

Clapp denies making the statements to Murray or threatening the Fannings at any time, see [ECF No. 188-4 at 4 ¶ 25; 5 ¶ 31; 6 ¶ 9; 7 ¶¶ 12, 14], and denies that he ever said he could get away with a crime due to his struggles with mental illness, see [id. at 7 ¶ 16], but admits that he knows Murray and that he blamed Fanning for interfering with an investigation into his mother's death, [id. at 7 ¶¶ 12–13].

2.     Attempt to Interview Clapp

After the call from Murray, Brooks and Kearns attempted to interview Clapp at his residence later that day.  [ECF No. 174 ¶ 25].  Brooks and Kearns state that lights were on at his home and that his car was in the driveway, but that Clapp did not answer the door.  [Id.].  Clapp maintains that he was not home and does not recall any time where a state trooper came to his home prior to his arrest.  [ECF No. 188-4 at 8 ¶ 25].  At some point on this same day, Kearns and Brooks spoke with Clapp on the phone.  [ECF No. 174 ¶ 25].  Although he admits he spoke with someone, Clapp maintains that he spoke with Brooks and Tully, who he says called him to ask if he filed a complaint with internal affairs against Fanning, to which he responded yes.  [Clapp Affidavit ¶¶ 18, 30; ECF No. 188-4 at 3 ¶ 12; ECF No. 207 ¶ 12].   Kearns said Clapp was "argumentative" on the call and that he "told them to get away from his house."  [ECF No. 174 ¶ 25].  Kearns later reported to Tobin that during this call he attempted to ask Clapp about his mother's death and whether he had made any threats against Fanning or his family.  [ECF No. 174-11 ¶ 10 (affidavit in support of application for arrest warrant ("Warrant Affidavit"))].  Kearns further reported that Clapp said that he blamed Fanning for a "cover up[,]" and also that

he "called the Colonel's office today and filed a complaint against Trooper Fanning[,]" but could not recall whom he spoke to.  [Id.]

>    3.    Text Messages and Warrant Application

Tobin was assigned to the State Police Detective Unit at the Norfolk District Attorney's Office and was participating in the investigation of Clapp's alleged threats against Fanning. [Warrant Affidavit ¶ 1]; see also [ECF No. 174 ¶ 23].  On March 8, 2016, Fanning told Tobin that he had received multiple text messages late in the evening of March 5 from a telephone number used by Clapp that blamed Fanning for interfering with his mother's death, including a text stating "MY PROMISE TO U IS I WILL GET U FIRED[.]"  [ECF No. 174 ¶ 21; ECF No. 174-5 ¶¶ 11–12 ("Fanning Affidavit")].  Fanning shared those text messages with Tobin.  [ECF No. 174 ¶ 21; Warrant Affidavit ¶¶ 3–7].  Fanning also provided a text message that Clapp sent to another third party that made similar threats and allegations against Fanning.  [Warrant Affidavit ¶ 7].  Fanning also told Tobin about the threats made during Clapp's conversation with Murray and that he feared for his family's safety because Clapp knew where he lived.  [ECF No. 174 ¶ 24; Warrant Affidavit ¶ 8].  The record does not explain what prompted Fanning to contact Tobin or whether Tobin reached out to Fanning.

Tobin also learned that Clapp called State Police Headquarters on the morning of March 8, 2016 to lodge a complaint against Fanning related to his mother's death and the lieutenant who answered the call instructed Clapp on how to make a formal complaint to the State Police. [Warrant Affidavit ¶ 11].  There is no evidence in the record that an internal affairs complaint was ever filed against Fanning.

After receiving all of this information, Tobin prepared an affidavit seeking an arrest warrant for Clapp for stalking and for threatening to commit a crime against Fanning and his family.  See [ECF No. 174 ¶ 26; Warrant Affidavit].  He submitted it to the Clerk-Magistrate at

the Stoughton District Court, who found probable cause to arrest and issued the arrest warrant. [ECF No. 174 ¶ 26; ECF No. 174-12].

    4.   <u>The Arrest</u>

On March 8, 2016, Clapp was arrested outside of his home in Brockton, Massachusetts. [ECF No. 174 ¶ 2; ECF No. 188-4 at 6 ¶ 2]. Defendants Tully, Brooks, Tobin, and Kearns went to the house to arrest him and, when they arrived, they found Clapp seated in his car in his driveway. [ECF No. 174 ¶¶ 28–29; ECF No. 185 at 5; ECF No. 188-4 at 1 ¶ 1]. Defendants state that Tully approached the vehicle, told Clapp that they had a warrant for his arrest, and that one of the Defendants told Clapp to get out of his car, but that Clapp instead attempted to put his key back in the ignition. [ECF No. 174 ¶¶ 30–32]. Defendants then instructed Clapp to hand over his keys, but he refused. [ECF No. 174 ¶ 33; ECF No. 188-4 at 8 ¶ 33]. Defendants contend that they identified themselves as police officers, displayed badges, [ECF No. 207 ¶ 9], and that, at Clapp's request, Tobin retrieved the warrant from his cruiser and showed it to him, [ECF No. 174 ¶ 39]. Clapp denies that what was shown to him was a warrant.[4] [<u>Id.</u> ¶¶ 38–41; ECF No. 188-4 at 8 ¶¶ 39–41].

It is undisputed that Clapp refused to get out of the vehicle voluntarily and that Defendants had to remove him forcefully by opening both the passenger and driver's doors of the vehicle. [ECF No. 174 ¶¶ 34–35; ECF No. 188-4 at 8 ¶¶ 34–35]. Plaintiff alleges that "[w]hile in his driveway, [he] was beaten and dragged by Troopers Tobin, Tully, Kearns, and Brooks. They kicked and punched him," [ECF No. 188-4 at 2 ¶ 5; at 6 ¶ 33], and also that he "was kicked on the left kidney, kicked on the right ear and to his back. He was hit with a metal

---

[4] Although Clapp admits to these exchanges in his Response to Defendants' Statement of Undisputed Facts, <u>see</u> [ECF No. 188-4 ¶¶ 33–35, 38], he also proffers a version of events where there was no communication at all before Defendants pulled him out of the car, [<u>id.</u> ¶ 1; Clapp Affidavit ¶¶ 1, 27].

instrument." [ECF No. 188-4 at 6 ¶ 34]. Because they have not moved for summary judgment on the excessive force claims, Defendants Brooks, Tully, Tobin, and Kearns respond only that these two statements are immaterial for present purposes. [ECF No. 207 ¶¶ 33–34].

At his trial on the charges that precipitated his arrest, Clapp was ultimately found "not guilty" on all counts. [ECF No. 188-4 at 2–3 ¶¶ 10–11; ECF No. 207 ¶¶ 10–11].

### C.    Procedural Background

Plaintiff, proceeding *pro se*, filed his complaint on March 5, 2018 against 79 defendants. [ECF No. 1]. The Court granted *in forma pauperis* status and ordered him to file an amended complaint that complied with the basic pleading requirements of the Federal Rules of Civil Procedure. [ECF No. 7]. On September 21, 2018, he filed a 14-page amended complaint against 41 defendants with multiple claims. [ECF No. 21]. The bulk of the claims were dismissed by an Order of this Court on March 14, 2019, [ECF No. 24], and then all claims against Defendant James Flanagan were dismissed on November 8, 2019, [ECF No. 67]. Defendants moved to dismiss the case in its entirety twice, see [ECF Nos. 94, 129], based on Plaintiff's failures to comply with discovery, but the Court denied both motions, acknowledging Defendants' frustrations, but noting that Plaintiff's misconduct did not justify the harsh sanction of dismissal, [ECF Nos. 125, 135]. Clapp obtained counsel in June 2021. See [ECF Nos. 139, 140]. The parties later stipulated to dismiss all claims against Defendant Vincent Noe on October 5, 2021, [ECF No. 152], and Defendant Mark Cohen on February 10, 2022, [ECF No. 232].[5]

Affording the amended complaint a liberal construction and relying on its plain language, see Cortés-Rivera v. Dep't of Corrs. and Rehab. of the Commonwealth of Puerto Rico, 626 F.3d

---

[5] Because Cohen's dismissal came after summary judgment was filed, the pleadings include allegations against Cohen. The Court has not considered any of those allegations in deciding the summary judgment motions.

21, 28 (1st Cir. 2010) (examining "plain language" of complaint and its structure to determine if it raised a claim), the Court construes Plaintiff's remaining claims as causes of action against all Defendants pursuant to 42 U.S.C. § 1983, for (1) illegal search and seizure based on his arrest without probable cause; (2) malicious prosecution; and (3) excessive force.[6]

On November 22, 2021, Defendants Kearns, Tully, Brooks, and Tobin moved for summary judgment on the malicious prosecution and illegal search and seizure claims, [ECF Nos. 175, 177, 179, 184], and Fanning moved for summary judgment on all counts against him, [ECF No. 181]. Plaintiff opposed the summary judgment motions on December 20, 2021, [ECF Nos. 188, 189, 190, 191, 192], and Defendants filed their replies on January 7, 2022, [ECF Nos. 195, 197, 198, 205, 206].

## II.    LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran, 328 F.3d at 6 (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's

---

[6] To the extent Plaintiff has attempted to raise any other claims or theories of liability in his opposition to summary judgment, specifically common law claims, and conspiracy or aiding and abetting theories of liability under 42 U.S.C. § 1983, the Court will not consider them. See [ECF No. 169 (Order denying leave to file a second amended complaint)]; see also [ECF No. 154 (Plaintiff's October 19, 2021 filing indicating causes of actions he intends to pursue)].

case." United States v. One Parcel of Real Prop. (Great Harbor Neck, New Shoreham, R.I., 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002) (citation omitted). That is, the nonmoving party must set forth specific, material evidence showing that there is "a genuine disagreement as to some material fact." One Parcel of Real Prop., 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6. The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz, 896 F.2d at 8); see also Serra v. Quantum Servicing, Corp., 747 F.3d 37, 39–40 (1st Cir. 2014) ("[A]llegations of a merely

speculative or conclusory nature are rightly disregarded[.]").  "[M]otions for summary judgment must be decided on the record as it stands, not on a litigant's visions of what the facts might some day reveal."  Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996) (quoting Maldonado–Denis v. Castillo–Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (internal quotation marks omitted)).  "Thus, speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion."  Id. (citing Dow v. United Bhd. of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993)).

## III.    DISCUSSION

Clapp brings his claims against all Defendants pursuant to 42 U.S.C. § 1983.  "Section 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State."  Klunder v. Brown Univ., 778 F.3d 24, 30 (1st Cir. 2015) (internal quotation marks and citations omitted).  "To make out a viable section 1983 claim, a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued."  Id. (quoting Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011)).  For the reasons discussed below, the Court concludes that Defendants did not violate Clapp's constitutional rights.  Therefore, the Court does not need to reach the defense of qualified immunity.

### A.    Count I: Illegal Seizure in Violation of the Fourth Amendment

The Fourth Amendment provides, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Clapp's claims against Defendants are best understood as allegations that Defendants violated his Fourth

Amendment rights by securing an arrest warrant and arresting him without probable cause, and then charging him with resisting arrest without probable cause.[7]

A claim for an unlawful seizure without probable cause cannot survive summary judgment where evidence shows that the arrest was effectuated on the issuance of a valid warrant and there is no evidence that the warrant lacked indicia of probable cause.  See Grassia v. Piers, 735 F. Supp. 2d 1, 7–11 (D. Mass. 2010), aff'd, 427 F. App''x 18 (1st Cir. 2011).  "The probable cause standard is a relatively low threshold for police officers to establish[,]" Robinson, 863 F. Supp. 2d at 64 (internal citation and quotation marks omitted), and the First Circuit has described it as "the facts and circumstances within [a police officer's] knowledge and of which [the officer] had reasonably trustworthy information … sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense."  United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).  "The exact degree of certainty required to establish probable cause . . . falls somewhere between bare suspicion [and] what would be needed to justify . . . conviction."  Burke v. Town of Walpole, 405 F.3d 66, 80 (1st Cir. 2005) (internal citations and quotation marks omitted).

Defendants contend that they are entitled to summary judgment on any illegal search and seizure claims related to the warrant application and subsequent arrest because (1) they had probable cause to believe that Clapp had committed the crimes of stalking and threats; (2) there

---

[7] Clapp has suggested that he is asserting independent claims for "false arrest", "false imprisonment," and "illegal search and seizure."  See [ECF No. 154 (Plaintiff's October 19, 2021 filing indicating causes of actions he intends to pursue)].  In this context, it is most appropriate to view the allegations as stating a single claim for a violation of Clapp's Fourth Amendment right to be free from an unreasonable seizure.  See Camilo-Robles v. Hoyos, 151 F.3d 1, 6 (1st Cir. 1998) ("The right to be free from unreasonable seizure (and, by extension, unjustified arrest and detention) is clearly established in the jurisprudence of the Fourteenth Amendment (through which the Fourth Amendment constrains state action).")

is no dispute that a warrant was issued by a neutral magistrate for his arrest; and (3) Clapp has failed to plead facts that demonstrate that Tobin knowingly or recklessly relied on false information in his affidavit in support of the warrant or that any of the Defendants had reason to doubt the validity of the warrant. See [ECF No. 185 at 6–10; ECF No. 176 at 6–13; ECF No. 178 at 4–8; ECF No. 180 at 5–8].

Plaintiff claims Defendants "did not have probable cause for both the warrant and the arrest" because "a finding of not-guilty was rendered in both courts" and that Defendants were instead "act[ing] in concert" to stop him from filing a complaint with internal affairs against Fanning for "refus[ing] to assist Plaintiff in the investigation of the death of his mother." [ECF No. 188 at 3–4].

      1.    <u>Issuance of Arrest Warrant</u>

The facts set forth in Tobin's affidavit in support of the application for the arrest warrant are sufficient to establish probable cause to believe that Clapp had committed the crimes of threats and stalking against Fanning and his wife in violation of Massachusetts General Laws chapter 275, § 2 (threats), and chapter 265, § 43(a) (stalking).

As to the threats charge, although § 2 does not specifically define "threat," case law has interpreted it "to mean when someone 'expresses an intention to inflict a crime on another, has the ability to carry out that crime, causes the victim to fear harm, and does so in circumstances that make the victim's fear justifiable." <u>Commonwealth v. Leonardo L.</u>, 175 N.E.3d 1230, 1234 (Mass. App. Ct. 2021), <u>review denied</u>, 2022 WL 509170 (Mass. Feb. 11, 2022) (quoting

Commonwealth v. Sholley, 432 Mass. 721, 727 (Mass. 2000), cert. denied, 532 U.S. 980

(2001)).[8]  Pursuant to § 43(a), the elements of the crime of stalking are:

> [w]hoever (1) willfully and maliciously engages in a knowing pattern of conduct or
> series of acts over a period of time directed at a specific person which seriously
> alarms or annoys that person and would cause a reasonable person to suffer
> substantial emotional distress, and (2) makes a threat with the intent to place the
> person in imminent fear of death or bodily injury[.]

Mass. Gen. Laws ch. 265 § 43(a).

The statements that Murray reported to the State Police in his initial call and subsequent

interview, along with the texts from Fanning, were sufficient to establish probable cause for both

crimes and to support the arrest warrant.  Further, it was reasonable for Tobin to believe that the

threats could potentially be carried out because Murray reported Clapp saying that he believed he

could get away with such crimes because of his mental health issues.  [ECF No. 174 ¶ 16;

Murray Affidavit ¶ 13].  Murray's statements alone, even without further evidence from Fanning,

were enough to support probable cause for an arrest.  This type of witness or victim testimony

"ordinarily can support a finding of probable cause."  Acosta v. Ames Dep't Stores, Inc., 386

F.3d 5, 10 (1st Cir. 2004); see also Forest v. Pawtucket Police Dep't, 290 F.Supp. 2d 215, 227

(D. R.I. 2003) aff'd, 377 F.3d 52 (1st Cir. 2004) ("[W]hen information comes from a victim or a

witness . . . there is a presumption that such information carries an indicia of reliability.").  In

this case, however, beyond Murray's statements, Tobin also relied on the text messages Fanning

---

[8] In their opposition briefing, Defendants relied on the elements provided in the
Massachusetts Model Jury Instructions, Instruction 6.70: "(1) The Defendant expressed
an intent to injure the person or property of another, now or in the future; (2) The
Defendant intended that his threat be conveyed to a particular person; (3) The injury
threatened, if carried out, would constitute a crime; and (4) The threat was made under
circumstances which could reasonably have caused the person to whom it was conveyed
to fear that the defendant had both the intention and ability to carry it out."  See [ECF No.
185 at 6].

received from a number associated with Clapp that were consistent with Murray's testimony and showed that Clapp was angry with Fanning for allegedly thwarting an investigation into his mother's death.  The information Fanning provided to Tobin, which detailed a long history of hostile and belligerent text messages from Clapp and referenced knowing where Fanning lived, see [Warrant Affidavit], coupled with Murray's testimony that Clapp frequently expressed anger and resentment towards Fanning, provided a sufficient basis for a reasonable police officer to find that there was probable cause to believe that Clapp was committing the offenses of stalking and threats.

Moreover, given their reliance on a facially valid warrant that was issued by a neutral magistrate following an independent review of the facts, Defendants Brooks, Tully, Tobin, and Kearns had probable cause to arrest Clapp.  See Abreu-Guzman v. Ford, 241 F.3d 69, 73 (1st Cir. 2001) (explaining that officers will be shielded from liability when making an arrest subject to a warrant "unless the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.").

Finally, while Clapp raises his acquittal to dispute the probable cause finding, "[p]robable cause determinations are, virtually by definition, preliminary and tentative[,]" Acosta, 386 F.3d at 11, and based on only the facts and circumstances known to the police officer at the time of arrest without the benefit of hindsight,  Roche, 81 F.3d at 254.  Therefore, Clapp's ultimate acquittal does not create a genuine dispute as to whether Defendants had probable cause at the time of arrest.

### 2.     Falsity

Because the affidavit supported a finding of probable cause for the stalking and threats charges, Clapp's only possible viable claim against Tobin, Brooks, Kearns, and Tully would be that they violated his Fourth Amendment rights by knowingly relying on false information in the

affidavit.  "A Fourth Amendment violation may be established if a [plaintiff] can show that officers acted in reckless disregard, with a high degree of awareness of [the] probable falsity of statements made in support of an arrest warrant," Burke, 405 F.3d at 81 (alternations in original) (citations and internal quotation marks omitted), or through the intentional or reckless omission of facts, id.

Here, Clapp has not proffered any actual evidence that casts doubt on the veracity of Tobin's affidavit.  Clapp's affidavit, opposition to summary judgment, and responsive statement of disputed and additional facts are all riddled with speculative and conclusory opinions that are not supported by any other evidence in the record.  See, e.g., [Clapp Affidavit ¶ 32 ("I never threatened to kill Trooper John Fanning and his wife."); ¶ 42 ("I never threatened the Fannings in the presence of Leo Murray or any other time."); ¶ 48 ("I never expressed to Murray any animosity toward the Fannings."); ¶ 49 ("I never stated that I could commit any crime and get away with it."); ECF No. 188 at 3 (there was "no probable cause for both the warrant and the arrest" because the Defendants were all "acting in concert" to fabricate claims)]; see also [ECF No. 188-4 at 5 ¶ 31; at 7 ¶¶ 12, 14–16, 20, 22].  Bald denials and allegations of this nature are insufficient to create a genuine dispute as to falsity and to preclude summary judgment.  See Anderson, 477 U.S. at 248–49 (explaining that Rule 56(e) prohibits "mere allegations or denials" and requires "specific facts showing there is a genuine issue for trial"); see also, e.g., Wilson v. Fairhaven, No. 18-cv-11099, 2021 WL 1387778, at *11 (D. Mass. Mar. 8, 2021) (finding that plaintiff's assertions that sworn statements used to support an application for a criminal complaint were "based on lies and perjury" constituted conclusory statements as well as subjective beliefs that do not comply with Rule 56); Grassia, 427 F. App'x at 22 (plaintiff's "bald allegations that [defendant] was recklessly disregarding the truth or that [defendant]

otherwise seriously doubted the facts outlined in his affidavit" were insufficient to undermine a finding a probable cause); Méndez-Aponte v. Bonilla, 645 F.3d 60, 68 (1st Cir. 2011) (affirming district court's grant of summary judgment and imposition of sanctions where "the plaintiffs' opposition to summary judgment and the statement of contested material facts consist, in large part, of speculation and conclusory allegations for which the only evidentiary support is [plaintiff's] sworn affidavit, which itself contains conclusory allegations.").

While the Court must draw all reasonable inferences in his favor, Clapp cannot rebut probable cause by merely "piling supposition on supposition, and expecting a jury to make numerous unsubstantiated inferences." Zahrey v. City of New York, No. 98-cv-04546, 2009 WL 54495, at *19 (S.D.N.Y. Jan. 7, 2009), amended on reconsideration in part, No. 98-cv-04546, 2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009); see also Harrison v. Cty. of Nassau, 804 F. App'x 24, 28 (2d Cir. 2020) (affirming district court's grant of summary judgment and dismissal of false arrest and malicious prosecution claims where defendants had "reasonably trustworthy information" supporting probable cause to arrest plaintiff and plaintiff's claims that defendants "wanted to arrest and incarcerate him regardless of whether he committed the crime, and that they manufactured evidence and witnesses to simulate probable cause . . . [were] unsupported by any evidence and [were] insufficient to create a question of material fact to overcome summary judgment").

Moreover, to the extent Clapp has attempted to assert in his opposition new theories of aiding and abetting liability or conspiracy counts, such claims are barred because new theories of liability cannot be raised in opposition to a motion for summary judgment.  See Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 76 (1st Cir. 2016).

Even assuming *arguendo* that Clapp had appropriately asserted these claims, apart from his broad accusation that Defendants "acted in concert" in effort to stop him from filing an internal affairs complaint against Fanning, see [ECF No. 189 at 2–3, 8–9], Clapp does not point to any material facts that demonstrate a conspiracy among all of the Defendants, see Burke v. Town of Walpole, No. 00-cv-10376, 2004 WL 507795, at *9 (D. Mass. Jan. 22, 2004) (finding that "vague and conclusory allegations" about defendants working together are insufficient to allege a civil conspiracy).  Even at the motion to dismiss stage, "[i]t has long been the law in this and other circuits that complaints cannot survive . . . if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts."  Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977).  Therefore, even assuming that Clapp's allegations could support the inference that Defendants had a motive to frame him based on his interest in an internal affairs complaint against Fanning, "motives alone are insufficient to establish 'overt acts' or 'agreements' which a plaintiff must demonstrate."  Parisi v. Suffolk Cty., No. 04-cv-2187, 2009 WL 4405488, at *12–13 (E.D.N.Y. Nov. 30, 2009) (granting summary judgment in favor of defendants where plaintiff failed to provide "anything other than sheer speculation and wholly conclusory allegations" to allege "a wide-ranging conspiracy among police officers and private citizens.").

       3.    Charge of Resisting Arrest

Clapp's pleadings also suggest that he was also charged with resisting arrest without probable cause.  See [ECF No. 188 at 6, 9].  Under § 32(B) of Massachusetts General Laws chapter 268, "[a] person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest . . . by: (1) using or threatening to use physical force or violence against the police officer

or another; *or* (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."  Mass. Gen. Laws ch. 268, § 32B (emphasis added).

Though some details of the arrest are in dispute, it is undisputed that Clapp refused to get out of the car, that he held onto the steering wheel to prevent being pulled out, and that it ultimately took the officers 20 minutes to remove him from the car.  See [ECF No. 174 ¶¶ 34–35; ECF No. 188-4 at 8 ¶¶ 34–35].  Despite his recent contentions that he did not know that he was being arrested, Clapp previously testified that he understood that the officers were trying to arrest him pursuant to a warrant.  [ECF No. 174-10 at 96:14–20; 97:8–11 (Plaintiff's Deposition)].  In light of these undisputed facts, no reasonable juror could conclude that the officers did not have probable cause to arrest Clapp for resisting arrest.  See Devine v. Woburn Police Dep't, No. 14-cv-13179, 2016 WL 5746348 at *8 (D. Mass. Sept. 30, 2016).

Accordingly, Defendants are entitled to summary judgment on Count I.

### B.      Count II:  Malicious Prosecution

Because the warrant affidavit supported a finding of probable cause for stalking and threats charges, Clapp's malicious prosecution claims must also fail.

To succeed on a § 1983 claim for malicious prosecution, a plaintiff must meet the common law elements and additionally demonstrate "a deprivation of a federally-protected right."  Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001).  "The elements of a common-law cause of action for malicious prosecution in Massachusetts are: (1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice."  Id.  In order to succeed on a malicious prosecution claim, "the absence of probable cause to initiate" the criminal proceedings is

*necessary*,  Meehan v. Town of Plymouth, 167 F.3d 85, 89–90 (1st Cir. 1999), and "cannot be

merely inferred from the fact of acquittal,"  Goddard v. Kelley, 629 F. Supp. 2d 115, 130 (D.

Mass. 2009) (citing Muniz v. Mehlman, 327 Mass. 353, 359 (Mass. 1951)).

As discussed in Section III.A *supra*, the Court has already determined that Clapp has

failed to put forth facts that create a genuine dispute of material fact as to whether there was

probable cause for the charges underlying the arrest warrant.  To the extent that he attempts to

bring a malicious prosecution claim based on the charge of resisting arrest, see [ECF No. 188 at

6, 9], his claim also fails because he was arrested for resisting arrest without a warrant and

malicious prosecution may not be based upon a warrantless arrest, see Meehan, 167 F.3d at 89–

90.[9]

Accordingly, Defendants are entitled to summary judgment on Count II.

---

[9]Apart from being the alleged victim of the crimes for which Clapp was arrested, Defendant
Fanning was not involved in the execution of Clapp's arrest or in the application for the warrant.
Neither providing information to law enforcement about an alleged crime, see Wilson, 2021 WL
1387778, at *15, or mere status as a public employee, subjects a person to § 1983 liability,
Broderick v. Talbot, No. 09-cv-11511, 2012 WL 4321355, at *6 (D. Mass. Sept. 20, 2012)
(quoting Gibson v. City of Chicago, 910 F.2d 1510, 1516 (7th Cir. 1990).  Clapp fails to provide
sufficient facts to allow a jury to find that Fanning worked in concert with other Defendants to
bring about an unlawful arrest.
Moreover, some of Clapp's pleadings before this Court suggest an excessive force claim
against Fanning, [ECF No. 189 at 1, 7–8], but because Fanning was not present at the arrest, any
excessive force claims Clapp purports to bring against him necessarily fail, see Walker v.
Jackson, 56 F. Supp. 3d 89, 96 (D. Mass. 2014) (holding that a non-participating officer cannot
be held liable for aiding and abetting excessive force unless the officer was present when
excessive force was used).
Accordingly, Fanning is entitled to summary judgment on all counts.

IV.    **CONCLUSION**

In accordance with the foregoing,

1.  Kearns' Motion to Strike, [ECF No. 196], Tully and Brooks' Motion to Strike, [ECF No. 199], Fanning's Motions to Strike, [ECF Nos. 201, 202], and Tobin's Motion to Strike, [ECF No. 208], are <u>GRANTED</u> in part with respect to the following paragraphs of Plaintiff's Concise Statement of Facts: [ECF No. 188-4 at 2–5 ¶¶ 8, 9, 14, 17–19, 24, 26–27; at 8 ¶ 32]; and Plaintiff's affidavit: [Clapp Affidavit ¶¶ 13–14, 21, 24–26, 31, 34–35]. Defendant Tobin's motion to strike Exhibit 11, [ECF No. 208 at 6], is also <u>GRANTED</u>. All other objections are <u>DENIED</u> with leave to renew at a later time if necessary.

2.  Tobin, Brooks, Tully, and Kearns' motions for partial summary judgment, [ECF Nos. 175, 177, 179, 184], and Fanning's motion for summary judgment, [ECF No. 181], are <u>GRANTED</u>.  All claims against Fanning have been terminated.  The only remaining claims are § 1983 claims against Tobin, Brooks, Tully, and Kearns for excessive force relating to Clapp's arrest.

The remaining parties are to appear for a pretrial conference on <u>March 24, 2022</u> at 9:15 AM.

**SO ORDERED.**

March 18, 2022                                             /s/ Allison D. Burroughs
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE